Brotherton v. Manhattan Beach Improvement Co.

ABIGAIL A. BROTHERTON, ADMINISTRATRIX, V. MANHATTAN BEACH IMPROVEMENT COMPANY.

FILED MAY 19, 1896.    No. 6639.

1. **Negligence.** Negligence is the failure to exercise such care, prudence, and forethought as under the circumstances duty requires should be given or exercised. It may consist in the omission to do something which a reasonable man guided by those considerations which ordinarily regulate the conduct of human affairs would do. *Foxworthy v. City of Hastings*, 23 Neb., 772, followed.

2. ———: PROXIMATE CAUSE. To establish a cause of action based on negligence it is not sufficient for the plaintiff to show that negligence existed, but he must also show that the negligence pleaded and proved was the proximate cause of the injury complained of.

3. ———: PRECAUTIONS AGAINST INJURY. A person owing a duty toward another may be liable for injuries resulting to the latter, although the former was in the first instance in nowise negligent and although the latter may, by his own negligence, have placed

himself in a position of danger, provided that after discovering the latter's danger the former failed to take reasonable precautions which, had they been taken, would have averted the injury.

4. ———: BATH-HOUSE COMPANY: LIABILITY FOR DEATH OF BATHER. A company maintaining a bathing resort and letting out its privileges to the public for hire is bound to take such precautions for the safety of bathers as a person of ordinary prudence would take under the circumstances; and whether or not proper precautions have been taken is ordinarily, like other questions of negligence, a question of fact.

5. ———: ———: ———. Accordingly, where such a company was notified of a bather's disappearance so soon after he had been seen as to warrant the inference that an immediate search in the water would have resulted in his rescue before death, and the company had no one present to watch bathers and rescue those in danger and such agents of the company as were present failed to make a search in the water for the missing man, it was erroneous to instruct the jury to return a verdict for the defendant.

ERROR from the district court of Douglas county. Tried below before SCOTT, J.

The opinion contains a statement of the case.

*B. G. Burbank*, for plaintiff in error:

The court erred in instructing the jury to return a verdict in favor of the defendant in error. The questions of fact, as disclosed by the evidence upon the trial, were for the jury to pass upon, and it was not the province of the court to take the question of fact from the jury. Whether there was contributory negligence upon the part of Hiram S. Brotherton was a question of fact for the jury to determine, and not for the court. (*Dolby v. Tingley*, 9 Neb., 417; *Grant v. Cropsey*, 8 Neb., 209; *Deitrich v. Hutchinson*, 20 Neb., 55; *Nebraska City v. Rathbone*, 20 Neb., 294; *Williams v. Town of Clinton*, 28 Conn., 266; *Atchison & N. R. Co. v. Bailey*, 11 Neb., 336; *Sioux City & P. R. Co. v. Stout*, 17 Wall. [U. S.], 657; *Park v. O'Brien*, 23 Conn., 338; *Detroit & M. R. Co. v. Van Steinburg*, 17 Mich., 99; *Union P. R. Co. v. O'Hern*, 24 Neb., 777; *City of Plattsmouth v. Mitchell*, 20 Neb., 231; *City of Lincoln v. Gillilan*, 18 Neb.,

117;  *Orleans Village v. Perry*, 24 Neb., 833;  *City of Lincoln v. Beckman*, 23 Neb., 682;  *Stevens v. Howe*, 28 Neb., 565;  *Union P. R. Co. v. Mertes*, 35 Neb., 211.)

*Gregory, Day & Day*, contra.

References:  *Murphy v. Hays*, 23 N. Y. Sup., 70;  *Murphy v. Hays*, 68 Hun [N. Y.], 450;  *Bradley v. Ft. Wayne & E. R. Co.*, 94 Mich., 35;  *Western R. Co. of Alabama v. Mutch*, 11 So. Rep. [Ala.], 894.

IRVINE, C.

This was an action under chapter 21, Compiled Statutes, by Abigail A. Brotherton, as administratrix of her son, Hiram Brotherton, to recover damages on account of the death of her intestate, alleged to have been caused by the defendant's negligence. At the close of the evidence the district court directed the jury to return a verdict for the defendant. The correctness of this instruction is presented for review.

The evidence discloses that Brotherton, a youth seventeen years of age, together with one Campion, a youth of about the same age, both residing in Omaha, went together on the 8th day of August, 1892, to Lake Manawa, a summer resort in Pottawattamie county, Iowa. There is on the shore of this lake an establishment maintained by the defendant company for the purpose of affording facilities to bathers. There are bath-houses, toboggan slides in the water, a platform for diving, and it seems, also, certain other resorts on the shore, such as a restaurant, a photograph gallery, and a shooting gallery. The privileges of these facilities are let out to the public by the defendant company for hire. Brotherton and Campion arrived at the beach about 4 o'clock in the afternoon, paid the customary fee for bathing privileges, donned bathing suits, and entered the water. Campion seems to have been very expert as a swimmer; Brotherton was able to swim, but was not expert. They remained in the

water not less than half an hour and perhaps more than three-quarters of an hour, and were together most of the time. Finally Campion returned to the bath-house, believing that Brotherton had preceded him. Not finding him there, he made inquiry, and learning that he had not returned, went back to the lake and searched for him among the bathers. He was not found and his loss was again reported. This resulted in a search through which his dead body was discovered, about 10 o'clock that night, at the bottom of the lake. The plaintiff alleged negligence on the part of the defendant in failing to provide suitable guards and notices whereby the depth of the water should be indicated, in failing to provide proper management to superintend bathing, and in failing to provide means for resuscitating persons overcome by strangulation or otherwise while in the water; also, in failing to maintain appliances to avoid drowning and for the purpose of resuscitation. Further, that no person was present on behalf of the defendant to search for or recover Brotherton immediately upon his disappearance from the surface of the water. These averments of negligence are more specific in the petition than we have given them here; but what we have said in a general way covers the averments.

Except on one point, we think the facts were such as to fully warrant the action of the trial court. There is evidence tending to show that, proceeding from the shore outward, the water was for more than one hundred feet comparatively shallow. Through this shallow water extended the diving platform referred to. In it were also constructed two toboggan slides. A few feet beyond the end of the platform and the outer toboggan slide there is evidence tending to show that there was a sudden deepening of the water; so that in the course of a very few steps it deepened from five or six feet to fifteen or twenty. Brotherton's body was found in this deep water. There was on the outer toboggan slide a sign as follows: "Dangerous! Keep Off Unless You Can Swim!" This mani-

festly referred to the toboggan slide and to nothing else. There were no life lines and no other signs to warn swimmers of the depth of the water. In a proper case the failure of persons maintaining a public bathing place to protect their patrons by suitable lines or warnings might afford a ground of recovery in case of injury. But there is absolutely nothing in the evidence to show that Brotherton's death was in any manner due to the failure of the company to provide such safeguards. There is no evidence whatever touching the circumstances of his drowning. He and Campion had twice, at least, swam out from the outer toboggan slide into the deep water. There is nothing to show that Brotherton was not aware of the depth of the water. They had returned, and when Brotherton was last seen by any witness it was by Campion himself, who testifies that they were standing near the platform at a point where the water was about knee deep. Campion's attention was then distracted by a conversation among other bathers near by. He proceeded thence to the bath-house, thinking that Brotherton had preceded him. How Brotherton got back into the deep water and what occurred there is not revealed by any evidence. It is not sufficient to establish a case for the plaintiff that negligence should be proved on the part of the defendant, but it must also appear that the negligence proved was the proximate cause of the injury. So far we have nothing, unless we indulge in conjecture absolutely unfounded on any facts established, to show that the failure of the company to provide life lines at the boundary of the shallow water and danger signals beyond them had any connection whatever with Brotherton's death.

But we think that there was evidence relevant to the issues in regard to subsequent facts which should have been submitted to the jury. Even though the defendant had not been in anywise negligent in providing facilities for the bathers, and although the deceased by his own negligence may have placed himself in such a situation

that his life was in danger, still, if the company, after becoming aware of such facts, was guilty of negligence but for which Brotherton's life would not have been lost, it was still liable.   One of the allegations of negligence is that the company did not have present any person or persons superintending the bathing, or to search for and recover Brotherton upon his disappearance from the surface.   Campion's testimony is that after leaving Brotherton he went immediately to the bath-house on the shore, and on discovering that Brotherton had not preceded him he at once notified the person in charge of the bath-house of the facts.   Instead of immediately instituting a search upon the water, this person advised Campion to look in the photograph gallery and in a saloon on the shore.   Campion knew from Brotherton's habits that he would not be in the saloon.   He did look elsewhere on the shore and then returned to the water and began diving, if his own testimony is to be believed, searching for the body; and for some time no effort was made by any of the company's employes to search in the water.   Negligence is the failure to exercise such care, prudence, and forethought as under the circumstances duty requires should be given and exercised.   It is the omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do.   (*Foxworthy v. City of Hastings*, 23 Neb., 772.)   As has been repeatedly said, the existence of negligence is generally a question of fact.   It is for the jury to determine, where the facts are disputed, or where from the undisputed facts different minds may reasonably draw different conclusions as to the existence of negligence.   This company was engaged in the business of carrying on a bathing resort. It let out for hire the privileges of that resort.   The evidence tends to show that for several years it was frequented during the bathing season by an average of ten thousand bathers a month.   It is disclosed that the com-

pany kept at the beach a boat for the express purpose of use in case of accident to bathers; but there does not seem to have been any one whose duty it was to watch over the bathers or to rescue those in danger.   In this case notice was brought home to an agent of the company, close to the shore, that a bather was missing, by Campion's inquiry upon entering the bath-house.   Campion says that he told this man that he was unable to find Brotherton two minutes from the time he left the latter.   Campion may have mistaken the time; but we have evidence other than his own estimate.   From the testimony as to the depth of the water, coupled with the testimony of Campion that when he last saw Brotherton they were standing in water knee deep, it would seem that Brotherton must have proceeded out into the lake about seventy-five feet before he got beyond his depth. Campion must then have been on the way to the bath-house.   Assuming Campion's testimony to be true, the proof rises to a moral certainty that when Campion first disclosed Brotherton's absence, the latter could not have been dead.   Assuming again the truth of Campion's testimony, instead of at once taking measures to search for Brotherton in the water, where he was last seen and where the danger existed, no search whatever was made by the company, and their direction to Campion was to search on the shore, where no danger was to be apprehended.   We think that it is a reasonable inference that persons of ordinary prudence conducting a bathing resort, frequented by ten thousand people a month, should in the exercise of ordinary care keep someone on duty to supervise bathers and rescue any apparently in danger; and if not, then it is certainly a reasonable inference that persons so situated should, on ascertaining that a person last seen in the water is missing, without a moment's delay exert every effort to search for that person in the water, and not merely advise a youthful companion of the missing person to search on the land and coolly watch the result of such search.   We think in this aspect

of the case, and this only, the evidence presented an issue which should have been submitted to the jury, and for that reason the peremptory instruction was erroneous.

Out of abundance of caution it may be well to repeat that our comments on the evidence have been based upon that theory of it most favorable to the plaintiff, as is required by the manner in which the case is presented. The evidence upon the vital points was conflicting. It was for the jury, and no more for this court than for the district court, to pass upon; and we are expressing no opinion whatever in regard to the weight of conflicting evidence, or even as to the inference which the jury should draw from undisputed facts. We merely hold that the evidence, viewed in one light, justified an inference favorable to the plaintiff, should the jury draw such inference.

REVERSED AND REMANDED.