ABIGAIL A. BROTHERTON, ADMINISTRATRIX, v. MAN-HATTAN BEACH IMPROVEMENT COMPANY.

FILED JANUARY 7, 1897. No. 6639.

Bath-House Companies: NEGLIGENCE: DAMAGES. The conclusions reached in the former opinion in this case considered and adhered to on rehearing.

REHEARING of case reported in 48 Neb., 563. *Judgment below reversed.*

*B. G. Burbank,* for plaintiff in error.

*Gregory, Day & Day, contra.*

RYAN, C.

There has been filed in this case an opinion, which was reported in 48 Neb., 563. A rehearing was afterward granted, and from this it results that it has again been presented for our further consideration. It is unnecessary to restate the facts involved, for they were very fully and accurately stated in the opinion above mentioned.

Counsel for the defendant in error, in their brief for rehearing, say there is only one point to which they wish to invite attention, and this they state in the following

language: "It seems to us clear that the court overlooked the fact that the plaintiff's testimony failed to establish that the deceased was accidentally drowned under such conditions that the jury could have found, from the facts of the case, that in the exercise of ordinary diligence the defendant could have prevented the death complained of. The second ground in the motion brings up substantially, if not the same question, a question germane to this." After stating the substance of the holding in *Cooper v. Central R. Co. of Iowa*, 44 Ia., 134, the language of the aforesaid brief was as follows: "That is to say, that no liability for negligence can be charged to a party unless he could have been shown, or it could have been presumed from what was shown, that in the exercise of reasonable care he could have prevented the injury complained of. On page 19 of the transcript N. M. Campion testified of missing the deceased, and the facts to which he testified with reference to the same disclose all that was known of the alleged drowning. What we contend for is that nobody could have known the locality where the body could have been found had it been required of the defendant to have had a man in a boat watching for the deceased to prevent accident. There is nothing to show that the utmost diligence which the defendant could so use in that respect would have enabled the recovery of the body in time to have secured resuscitation. That is to say, that in going down under the water, whether he did it by plunging or by sinking, whether by struggling under the surface he had moved at a distance from where he disappeared of eight, ten, or fifteen feet, rests absolutely on conjecture. Now, before the jury could be satisfied in law in finding for the plaintiff, it must have been made to appear that in the exercise of reasonable care the body of the deceased could have been recovered and resuscitation produced." This extended quotation, which summarizes the contentions on behalf of the defendant in error, presents one general proposition, and that is that there was no evidence from which the jury

would have been justified in finding that by the exercise of ordinary diligence the defendant could have prevented the death complained of. The application of this principle was limited to the possibility of finding the body before life is extinct, and thereupon producing resuscitation. This, standing alone, was not the proposition of special importance in the opinion heretofore filed. A very careful re-examination of all the evidence has convinced us that no fairer summary of the salient features of this case can be formulated than is contained in the said opinion, and, acting on the principle of letting well enough alone, we reproduce the following language: "It is disclosed that the company kept at the beach a boat for the express purpose of use in case of accident to bathers. But there does not seem to have been any one whose duty it was to watch over the bathers or to rescue those in danger. In this case notice was brought home to an agent of the company, close to the shore, that a bather was missing, by Campion's inquiry upon entering the bath house. Campion says he told this man that he was unable to find Brotherton two minutes from the time he left the latter. Campion may have mistaken the time. But we have evidence other than his own estimate. From the testimony as to the depth of the water, coupled with the testimony of Campion that when he last saw Brotherton they were standing in water knee deep, it would seem that Brotherton must have proceeded out into the lake about seventy-five feet before he got beyond his depth. Campion must then have been on the way to the bath house. Assuming Campion's testimony to be true, the proof rises to a moral certainty that when Campion first discovered Brotherton's absence the latter could not have been dead. Assuming again the truth of Campion's testimony, instead of at once taking measures to search for Brotherton in the water, where he was last seen and where the danger existed, no search whatever was made by the company, and their direction to Campion was to search on the shore, where no danger was to be appre-

hended.    We think that it is a reasonable inference that persons of ordinary prudence conducting a bathing resort frequented by 10,000 people a month should, in the exercise of ordinary care, keep someone on duty to supervise bathers and rescue any apparently in danger; and, if not, that it is certainly a reasonable inference that persons so situated should, on ascertaining that a person last seen in the water is missing, without a moment's delay, exert every effort to search for that person in the water, and not merely advise a youthful companion of the missing person to search on the land, and coolly watch the result of such search.    We think in this aspect of the case, and this only, the evidence presented an issue which should have been submitted to the jury, and for that reason the peremptory instruction was erroneous." (*Brotherton v. Manhattan Beach Improvement Co.*, 48 Neb., 563.)   From this quotation it will be seen that our former conclusion was not reached alone upon the assumption that the negligence of the defendant consisted in failing to find the body of Brotherton before life was extinct and producing resuscitation.    The testimony, which might have justified a finding of negligence, tended to establish the fact that the company was informed soon enough after Brotherton's disappearance to have assisted him, perhaps before he sank, if proper means had been at once taken. Another fact proper to be taken into account by the jury was that there was no one at the bathing place charged with the duty of giving timely assistance to bathers in case of accident.    It seems to be assumed by the argument of the defendant in error that immediately upon Brotherton's being missed, there remained nothing to be done but to look for his submerged body.    If this assumption is correct, it quite conclusively implies that necessary relief, to be effective, must be rendered as soon as the bather is seen to be in trouble.   The evidence shows that the defendant invited everyone to partake of its privileges, without regard to his or her ability to swim. It was, therefore, to be reasonably expected that among

10,000 monthly patrons there would be some without skill or experience. It must be admitted that in case an unskillful swimmer was about to drown, tardy aid would probably be unavailing. It therefore seems to us that a jury would have been justified in finding, in respect to Brotherton, that the failure to provide a watcher in advance to prevent such accidents, and, upon timely information of existing imminent danger to him, to neglect attempting to afford him immediate assistance was negligence on the part of the defendant. In *Dinnihan v. Lake Ontario Beach Improvement Co.*, 8 App. Div., 509, 40 N. Y. Supp., 764, it was held that one who maintains a public bathing beach must be vigilant in keeping the premises safe for his customers, and that he cannot escape liability merely by showing that he has done nothing to render the premises unsafe. In the case just cited the improvement company offered a bathing place for the use of the general public for a small consideration, and the deceased, while availing herself of the privilege, was drowned in deep water caused by a depression in the bottom of the lake, which defendant claimed to have been recently formed by a current in the water. The principle above stated, as applied to the facts, was very analogous to that which we recognize as applicable to the facts of this case. We are satisfied that our former conclusion was correct, and accordingly the judgment of the district court is

REVERSED.