BLAKELEY v. WHITE STAR LINE.

1. NEGLIGENCE—USE OF PREMISES—TRESPASSERS—LICENSEES.
    Though one is under no obligation to keep his premises safe for trespassers, he is obliged to use ordinary care to keep them reasonably safe for those whom he invites thereon, either for business or pleasure.

2. THEATERS AND SHOWS—AMUSEMENT PARK—INJURIES TO GUEST —LIABILITY.
    Where the owner of an amusement park allowed a game of throw and catch to be played in the vicinity of the dancing pavilion therein, at a point other than the diamond set apart for ball games, without giving notice to other visitors, or making proper arrangement for their protection, he was liable for injuries inflicted by the ball upon a guest who had no notice of the game.[1]

3. SAME—LIABILITY OF OWNER—PECUNIARY PROFIT—NECESSITY.
    Pecuniary profit to the owner of an amusement park is not essential to render him liable for injuries to an invited guest arising from his permitting a dangerous game at an unusual place.

---

[1] As to liability of one maintaining place of amusement to which the public are invited for safety of persons visiting premises, see note to *Higgins* v. *Franklin County Agricultural Society* (Me.), 3 L. R. A. (N. S.) 1132.

Error to Wayne; Rohnert, J.   Submitted October 12, 1908.   (Docket No. 43.)   Decided November 30, 1908.

Case by William Blakeley against the White Star Line for personal injuries.   There was judgment for defendant on a verdict directed by the court, and plaintiff brings error.   Reversed.

*Clarence P. Milligan*, for appellant.

*Gray & Gray*, for appellee.

The defendant owns and operates a line of boats running from Detroit to various places on the St. Clair river. It owns and controls a pleasure resort known as "Tashmoo Park."   It makes no entrance charge to visitors, but makes its profit by carrying passengers to and from the park.   It has furnished various means of amusement, including a baseball ground known as "the diamond," a dancing pavilion, and places for other forms of amusement.   On June 18, 1905, the retail clerks of Detroit gave a special excursion to the park, and were given by the defendant the right to the possession of the diamond for the purpose of playing baseball.   Plaintiff went to the park with this excursion.   When the excursion arrived the diamond was in possession of a club of players known as the "Mohawk Club."   They surrendered, evidently under the instruction of the defendant, the diamond to players of the retail clerks.   Some members of the Mohawk Club on leaving the diamond went outside, between it and the pavilion, where a dance was in progress, and commenced pitching and catching balls.   Plaintiff stood near the pavilion, with his back to the players, watching the dance.   A ball was thrown towards the pavilion. The catcher failed to catch it, and it struck the plaintiff's ankle with such force that it broke the bones.   Plaintiff brought this suit, alleging negligence on the part of the defendant, its agents, and servants:

"To keep and maintain its park and recreation grounds

in an orderly manner, * * * and to see that all dangerous games, diversions, and recreations, in which there was an element of danger to patrons and the public, should not be played upon any portion of its park except that set aside for such diversions and amusements, and not in places in said park in close proximity to the paths and spots where passengers and patrons were accustomed to be and to gather, and at places not intended for the exercise and carrying on of such pastimes and diversions."

The declaration further avers the duty of the defendant to employ and maintain in its park agents and servants for the purpose of seeing to the care, safety, and security of its patrons, and a violation of this duty. At the close of the plaintiff's case the court directed a verdict for the defendant. In so directing he stated:

"The game of throw and catch would not be a dangerous game where it is conducted in a way that is not wild and erratic, and there is nothing in the testimony to indicate that it was extremely wild and careless, or that the conduct of the little game that was being conducted would be such that people must take notice of, those people who are supposed to look out for the comfort and safety of the people in the park. It is just such a game as people visiting a park of this kind might naturally expect to be conducted there, and which they must look out for. They must look out for the dangers incident to such a game."

GRANT, C. J. (*after stating the facts*). Counsel for each party cite with approval, as the law applicable to this case, the statement of Justice COOLEY, in his work on Torts (page 605):

"One is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."

This rule has been cited with approval by this and many

of the courts of other States. The difficulty lies only in applying the rule to the facts of a given case. We find, however, no difficulty in applying the rule to the facts here. Plaintiff was invited to the defendant's park or pleasure ground to spend the day. In so far as various sports were allowed to be carried on in places allotted for them, visitors who went to the vicinity of these places to witness the sports undoubtedly assumed the risk of danger. In this case the defendant had marked off grounds for the game of baseball. It is knowledge common to all that in these games hard balls are thrown and batted with great swiftness; that they are liable to be muffed or batted or thrown outside the lines of the diamond, and visitors standing in position that may be reached by such balls have voluntarily placed themselves there with knowledge of the situation, and may be held to assume the risk. They can watch the ball, and may usually avoid being struck. Plaintiff had no reason to anticipate a game of throw and catch off the diamond, and in close proximity to the dancing pavilion. The defendant should not have permitted such a game in close proximity to a crowd of visitors, without giving notice, or making proper arrangement for the protection of its visitors. There is testimony from which a jury might infer that this game, in this unusual place, had been going on for a sufficient length of time to give notice to the defendant's agents or superintendents that it was in progress, and that a woman had been struck nearly a half hour before, and seriously injured by a ball thus thrown. The owners of pleasure resorts may not permit dangerous sports to be played in places other than those set apart for them. This plaintiff was standing where he had been invited. He was not in any danger from a ball game played at the customary place. The defendant owed him a duty, and that was either to prevent the game at that unusual place, or to notify him and other visitors that it was to be played. It was likewise its duty to keep a reasonable number of watchmen or servants to see that its grounds were protected from

the playing of games as dangerous as this was. It may safely be inferred that this ball was thrown with all the force and swiftness with which the thrower was capable. The result justifies the inference. This may not be "extremely wild and careless" ball throwing, as between players who were on their guard, or as to visitors who were warned that the game was in progress; but as to those who were not warned, and who have no knowledge of it, I do not agree with the circuit judge that it was not "wild and careless throwing."

We held in *Cousineau* v. *Traction Co.*, 145 Mich. 314, that a common carrier of passengers owning a park owed a duty to the plaintiff, a girl, to protect her from the crowd as she was attempting to enter one of its cars. For the same reason there given, the owner of the park is bound to protect its invited guests from unusual occurrences which may result in serious danger to its patrons, if he has the requisite notice or knowledge. The rule we have thus enunciated as applicable to this case is sustained by the following authorities: *Selinas* v. *Agricultural Society*, 60 Vt. 249; *Richmond, etc., R. Co.* v. *Moore's Adm'r*, 94 Va. 493 (37 L. R. A. 258); *Lane* v. *Agricultural Society*, 62 Minn. 175 (29 L. R. A. 708); 1 Thompson on Law of Negligence, § 998; *Brotherton* v. *Improvement Co.*, 48 Neb. 563 (33 L. R. A. 598), 50 Neb. 214; *Indianapolis St. Ry. Co.* v. *Dawson*, 31 Ind. App. 605; *Williams* v. *Park Ass'n*, 128 Iowa, 32 (1 L. R. A. [N. S.] 427, 5 Am. & Eng. Ann. Cas. 924, and note). See, also, *Larkin* v. *Saltair Beach Co.*, 30 Utah, 86 (3 L. R. A. [N. S.] 982, 8 Am. & Eng. Ann. Cas. 977). Invitation is sufficient. Pecuniary profit to the owner is not essential. 1 Thompson on Law of Negligence, § 968; *Davis* v. *Congregational Society*, 129 Mass. 372.

The learned counsel for the defendant cite and rely upon *Steele* v. *City of Boston*, 128 Mass. 583, and other similar cases. In that case the public park was "traversed by divers footpaths, leading in different directions,"

with openings in the fence, to give access to and from the adjoining streets. One of these paths had been fitted up by the public authorities for boys to coast upon with sleds. They had built a bridge over an intersecting path, and had stationed a policeman at the foot of the path to keep people from walking on it. It had turned water on it so that it might freeze and render the path slippery. The plaintiff deliberately walked along this path and was injured by a coaster. The court used the following language:

"If a private person owned a similar park to which he had given the public free access, we are at a loss to see how he could be held liable for an accident like that of the plaintiff. Such person might, if he saw fit, set apart and fit for use one of the paths for the recreation of youth in coasting, and if any one should, as was the case with the plaintiff, choose to enter upon the path, seeing that it was set apart for this purpose, he would do so at his own risk, and could not hold the owner responsible if he was injured by a passing sled."

The court further held that, if the path were in a public highway, the plaintiff could not maintain his suit because the statute gave no right of action. That case does not apply to this.

So the defendant in its private park may establish places for a sport dangerous to those visitors who choose to come within the radius of danger, without incurring liability for an injury. Visitors, however, may properly assume that they may visit other places without being exposed to the dangers of the same sport elsewhere.

Judgment reversed, and new trial ordered.

BLAIR, HOOKER, MOORE, and MCALVAY JJ., concurred.