[L. A. No. 2748. Department One.—December 7, 1911.]

## MARY FLORA, Appellant, v. BIMINI WATER COMPANY (a Corporation), Respondent.

NEGLIGENCE—CONSTRUCTION OF FINDINGS—ABSENCE OF NEGLIGENCE.—
Findings of the court are to be read as a whole, and are, if possible, to be so interpreted as to uphold the judgment entered upon them. In the present case, the findings criticised, negativing the plea of contributory negligence, when read in connection with the other findings, cannot be construed as a finding that the defendant was guilty of negligence.

ID.—DROWNING IN BATHING ESTABLISHMENT—EVIDENCE—PRECAUTIONS TO AVERT ACCIDENTS.—In an action to recover for the alleged

negligent death of a child in a public bathing establishment, the evidence is held sufficient to sustain the finding that the defendant provided and caused to be present persons experienced in life-saving for the purpose of rescuing any person who was liable to drown, and had provided proper life-guards at said place.

ID.—DROWNING NOT PROOF OF NEGLIGENCE.—The mere fact that a drowning occurred in such a place is not conclusive proof of negligence on the part of the proprietor.

ID.—DUTY TO PROVIDE LIFE-SAVING GUARDS.—It cannot be said, as matter of law, that the proprietor of the bathing establishment was bound to have a guard stationed in immediate proximity to the deep water in a swimming pool, and it was for the trial court to determine, under all the facts, whether the arrangements made were reasonably adapted to the end of protecting his patrons, and were such as an ordinarily prudent person, similarly situated, would have made.

APPEAL from a judgment of the Superior Court of Los Angeles County. W. R. Hervey, Judge.

The facts are stated in the opinion of the court.

E. B. Drake, for Appellant.

John Murray Marshall, and Wilbur Bassett, for Respondent.

SLOSS, J.—This action was brought to recover damages for the death of plaintiff's twelve-year-old son, Veach Criswell. The defendant is the proprietor of a bathing establishment in the city of Los Angeles. On February 26, 1909, young Criswell visited said establishment, and, entering a swimming tank or plunge therein, was drowned. The complaint alleges that his death was due to the negligent failure of defendant "to provide a person or persons experienced in life-saving to be then and there present for the purpose of rescuing the deceased, or any one else, who was liable then and there to drown." It further alleged that defendant had knowledge of the dangerous character of the plunge when used without a proper lifeguard stationed at or near the place where the boy was drowned, but that, notwithstanding such knowledge it negligently failed to provide any such lifeguard. The answer denied the allegations of negligence, and set up, as an affirmative defense, that plaintiff was guilty of contributory negligence, and that if he sustained any of the injuries set forth in

said complaint, "the same were caused wholly and entirely by the fault, carelessness and negligence of plaintiff, and without any fault, carelessness or negligence upon the part of this defendant." The contributory negligence of the infant himself is alleged in similar terms.

The cause was tried by the court without a jury. The findings were against the plaintiff on her averments of negligence, and judgment went in favor of the defendant. The plaintiff appeals from the judgment, bringing up the evidence by means of a bill of exceptions.

The principal contention on this appeal is that the evidence is insufficient to sustain the findings negativing negligence on the part of the defendant. Before considering this question, we may, however, briefly notice the claim of appellant that the findings themselves do not support the judgment. This claim is based upon the language used by the court in making its findings in response to the issue of contributory negligence. It found, in finding No. X, that the plaintiff was not guilty of contributory negligence, and that "if plaintiff sustained the injuries set forth in said complaint, the same were not caused wholly and entirely by the fault, carelessness and negligence of plaintiff and without any fault, carelessness and negligence on the part of the defendant." A similar finding (No. XI) was made with respect to the plea of contributory negligence on the part of Veach Criswell himself. It is said that these findings declare that the injuries were not caused "without any fault, carelessness, or negligence on the part of the defendant"; that they therefore find, in effect, that the injuries *were* caused by the defendant's negligence, and that they are so directly in conflict with the findings in favor of defendant on the issue of its negligence that the judgment cannot be supported. But it seems clear that findings X and XI were not intended to declare, as a fact found, that the defendant had been guilty of negligence. As a mere matter of grammatical construction they may bear such meaning. But the findings of the court are to be read as a whole, and are, if possible, to be so interpreted as to uphold the judgment entered upon them. (*Krasky* v. *Wollpert*, 134 Cal. 338, [66 Pac. 309]; *Paine* v. *San B. V. T. Co.*, 143 Cal. 654, [77 Pac. 659].) Findings X and XI were evidently intended to meet the issue of contributory negligence, and that alone. They follow the exact form

of the defenses averring such contributory negligence, and traverse every element of that defense. The court might have stopped with a finding that the injuries were not caused by the negligence of the plaintiff or of Veach Criswell. In going on and finding, further, that such injuries were not caused "without the fault, carelessness or negligence of the defendant," it sought to find on everything stated in the attempted defense, and it inadvertently used language which was not entirely appropriate to convey the idea in its mind. But it certainly cannot have intended, in finding against the plea of contributory negligence, to make a finding which should be directly contradictory to what it had already found on the main issue of defendant's negligence. Reading the findings as thus suggested, they may readily be harmonized, and in such manner as to give effect to the apparent intention of the court making them.

On the question of the sufficiency of the evidence, the only question is whether there was enough to justify the finding that the defendant provided and caused to be present persons experienced in lifesaving for the purpose of rescuing any person who was liable to drown; and did provide proper lifeguards at said time and place. We need not enter into any discussion concerning the rules of law governing the duty of one maintaining a swimming or bathing establishment frequented by the public. Since the court found in this case that the defendant did have present persons experienced in lifesaving and did provide proper lifeguards, it is immaterial whether it be said that the duty of furnishing such protection arises, as matter of law, or that the necessity for such provision is, in each case, a question of fact for the trial court or jury. (See *Larkin* v. *Saltair Beach Co.*, 30 Utah, 86, [116 Am. St. Rep. 818, 3 L. R. A. (N. S.) 982, 83 Pac. 686]; *Brotherton* v. *Manhattan Beach Imp. Co.*, 48 Neb. 563, [58 Am. St. Rep. 709, 33 L. R. A. 598, 67 N. W. 479], s. c. 50 Neb. 214, [69 N. W. 757].)

The defendant's establishment was in a building containing three pools or tanks. Two of these were situated side by side, running for a distance of ninety-two feet along the longer axis of the building. They were separated by a tile wall twenty-one inches in width. One of them, the one in which the plaintiff's son met his death, was forty feet wide, the other thirty. The

first was graded in depth, beginning with three feet of water at one end, and increasing to seven at the other. The third pool ran across the building, opposite the ends of the two first mentioned. It was seventy feet in length, and was separated from the others by a cement deck eight feet wide. The deep water in the first pool was at the end farthest removed from this deck. The depth of the tank at various points was plainly indicated by signs painted on the sides.

The accident resulting in Criswell's death occurred at about eight o'clock in the evening. There were some twenty-five or thirty bathers in the tank at the time. Criswell had gone to the baths with another boy, Harold Rampe. Both, it appears, were able to swim. Criswell jumped in at the deep end. He failed to rise above the surface. Rampe, observing this, dove in and attempted a rescue. Failing, he got out of the pool, and ran to the cement deck at the other end, where he found a lifeguard upon whom he called for help. The guard at once ran (or "trotted") along the dividing wall of the two tanks toward the scene of the trouble. When he reached a point opposite the spot where the boy had sunk, having taken, as he said, about fifteen seconds to get there, the body had already been taken out of the water by other bathers. Every possible effort to resuscitate the boy was made, but in vain.

Rampe testified that he had repeatedly shouted for help while he was in the water with the drowning boy, but there was ample evidence to justify the court below in discrediting this statement. So, too, the testimony was such as to warrant the conclusion that any struggle on the part of either boy took place under the surface of the water.

The lifeguard who responded to the call for help was an expert swimmer and lifesaver. He was employed at the baths as a teacher of swimming, and it was his duty to act as lifeguard. He was so acting on the evening in question, and had taken his station on the deck opposite the shallow end of the first pool, at a point from which he could watch the three pools, and he was watching them. At the moment of the drowning, he was facing in such manner that his side was turned toward the tank in which the boys were. He heard no cry for help, and observed no struggle in the water. He testified that, from the point at which he was standing, he could not have seen Criswell struggling below the surface. The first intimation

of trouble came to him with the appeal of the other boy for help. There were other employees, stationed at various points about the tank. Three of them were women, who had various duties to perform, but each had instructions to watch the pool. One of them, who testified that she was about thirty feet from the place of drowning, had been trained in the use of the life-buoys and life poles which were at hand for use near the deep water. A foreman was also on duty watching the pool. At the time of the occurrence in question he was with the swimming teacher.

On this state of facts there is no foundation for the claim that the finding that the defendant had not been guilty of negligence was unsustained by the evidence. The showing was that a rather elaborate and complete system for the vigilant supervision of the pools had been established, and there was nothing to compel the inference that the persons charged with the duty of watching the pools were not giving proper attention to this duty. The mere fact that a drowning occurred, regrettable though it be, is not, of course, conclusive proof of negligence. Nor can it be said that the defendant was, as matter of law, bound to have a guard stationed in immediate proximity to the deep water end of the pool. It was possible that bathers at other points might get into positions of danger, and it was for the court below to determine, under all the facts, whether the arrangements made were reasonably adapted to the end of protecting the defendant's patrons, and were such as an ordinary prudent person, situated as defendant was, would have made.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.