MAGGIE PIERCE, as Administratrix, etc., of LAURA PIERCE, Deceased, Plaintiff, *v.* VILLAGE OF RAVENA, Defendant.

Supreme Court, Trial Term, Albany County, July 13, 1940.

*Harry A. Allan* [*John J. Biscone* of counsel], for the plaintiff.

*Eugene J. Hummer* [*Ellis J. Staley* of counsel], for the defendant.

BERGAN, J.   The theory of the plaintiff's cause of action is that the negligence of the defendant's employee, Nicholas Tiberia, a lifeguard, was the proximate cause of the death of her intestate; that the defendant is responsible for his negligence and accordingly must respond to the plaintiff for damages growing from the death of the intestate.   The first question raised upon the defendant's motions for a dismissal of the complaint and nonsuit, which were reserved by consent, is whether the proof adduced by the plaintiff is sufficient to establish the negligence of the defendant's lifeguard. Upon the consideration of these motions the proof must be viewed in that aspect most favorable to the plaintiff.

That the jury could have found under the proof that the lifeguard was negligent and that his negligence was an efficient and

proximate cause of the intestate's death seems to be more or less assumed by counsel in their briefs upon the questions of law raised by defendant's motions. The arguments are largely addressed to other questions in the case. Thus, too, was the negligence of the servants of the town as to the proximate cause of the drowning assumed in *Augustine* v. *Town of Brant* (249 N. Y. 198, 201). In *Dinnihan* v. *Lake Ontario Beach Imp. Co.* (8 App. Div. 509, 513) it was held that the negligence of defendant in permitting a dangerous condition to exist and the causal association of the drowning with that condition were questions of fact. (See, also, *Nugent* v. *Vandeveer*, 38 Hun, 487, and, as reconsidered, 39 id. 322.)

Where several proximate causes contribute to an accident and each is an efficient cause, without the operation of which an accident would not have happened, " it may be attributed to all or any of the causes." (*Ring* v. *City of Cohoes*, 77 N. Y. 83, 90.) It may be stated as a general proposition that the failure of a third person to interrupt a primary cause of danger is not the proximate and negligent cause of injury, but where " a duty devolves on another person in reference to such act or condition which such person fails to perform, such failure is the proximate cause of the injury resulting from the act." (45 C. J. p. 937.) See, by way of analogy, the negligence of a manufacturer of equipment (*Sider* v. *General Electric Co.*, 203 App. Div. 443) and the cases of intervening negligence in acts of God, of which *Michaels* v. *New York Central R. R. Co.* (30 N. Y. 564) and *Greeley* v. *State* (94 App. Div. 605) are examples.

In *Brotherton* v. *Manhattan Beach Imp. Co.* (50 Neb. 214; 69 N. W. 757) the Supreme Court of Nebraska held that a situation quite similar to this one presented a question of fact as to liability. There the attention of an employee of the defendant was called to the fact that a bather was missing at a time when it could have been found from the evidence that the bather was not dead. Instead of taking measures for a search in the water the employee directed a search on the shore, where, as the court remarked, " no danger was to be apprehended." It is a reasonable inference, the court said, that persons of ordinary prudence conducting a bathing resort " on ascertaining that a person last seen in the water is missing, without a moment's delay, exert every effort to search for that person in the water, and not merely advise a youthful companion of the missing person to search on the land and cooly watch the result of such search. We think in this aspect of the case, and this only, the evidence presented an issue which should have been submitted to a jury."

This is from the court's own quotation of its previous decision in the case at 48 Neb. 563; 67 N. W. 479. In affirming its prior

conclusion the court further said that a jury would have been justified in finding that " upon timely information of the existence of imminent danger to him [the bather] to neglect attempting to afford him immediate assistance was negligence." This decision was followed by the Supreme Court of Utah in *Larkin* v. *Saltair Beach Co.* (30 Utah, 86; 83 P. 686) in circumstances quite similar to those arising here.

The fact that plaintiff's intestate sank in the water could not under the proof be attributed to the negligence of the lifeguard. (*Curcio* v. *City of New York*, 275 N. Y. 20.) It could be found from the plaintiff's proof, however, that the attention of the lifeguard had been called to the precise place at which plaintiff's intestate had gone down in the water; that it was at this place her body was found; that instead of acting expeditiously on the information given him, the lifeguard started a futile search for the missing girl on the bank of the pool; that the lifeguard thereby dissipated priceless time, which could have been utilized in rescuing her from the water; that a period of twenty minutes elapsed from the time when the lifeguard was first told of the place of the sinking of the girl and the recovery of her body; that the prompt utilization of the time available would have resulted in the saving of the life of plaintiff's intestate, since she was still alive and a pulse was present at the time she was taken from the water; and, finally, that the failure of the lifeguard to act promptly in undertaking the rescue was negligence which rendered resuscitation futile and hence had a causal association with her death.

The lifeguard was in open and public attendance at the pool. He had the obligation under the terms of his employment with the defendant of exercising reasonable care to prevent accidents and to deal with conditions of danger that might come to his attention. It was an obligation to the users of the pool and it was reasonable for one using the pool to expect that the lifeguard would promptly and competently undertake the rescue of a bather who had gone down in the water. The users of the pool would be expected to look to and rely upon the lifeguard for help in such a situation rather than other casual users of the pool of unknown experience and without the interest in safety that the employment would impose upon the official lifeguard.

Therefore, steps which might otherwise have been taken to rescue plaintiff's intestate were naturally enough referred to Tiberia. There was no time to consider alternatives. The lifeguard was there. The situation was put in his hands. He undertook to act in relation to it. He thereafter lost time which ought to have been devoted to rescuing plaintiff's intestate. Thus runs the plaintiff's

proof that Tiberia did not act with reasonable dispatch after having taken charge of the matter. He could, under this proof, have been found to be negligent. It could well have been found that the delay in commencing the search was the measure of the postponement of the rescue. It could, therefore, be found that this prevented resuscitation and was the proximate cause of the death of plaintiff's intestate.

If, as it is inferred in *Curcio* v. *City of New York (supra,* page 25), a lifeguard who is inattentive may be deemed negligent in a resulting drowning, one whose attention is called to an accident and who fails to act with reasonable promptitude and skill may likewise be found to be negligent. Under the proof established in support of the plaintiff's cause of action, the negligence of the lifeguard and the causal relationship of such negligence to the intestate's death accordingly become questions of fact.

In maintaining its public swimming pool, even without charge to the users, the defendant village was not engaged in a governmental function. (*Augustine* v. *Town of Brant, supra; Peterson* v. *City of New York,* 267 N. Y. 204; *Curcio* v. *City of New York, supra; Fritz* v. *City of Buffalo,* 277 N. Y. 710; *Collentine* v. *City of New York,* 279 id. 119.) Under these authorities the duty devolved upon the village of exercising ordinary care in the maintenance and operation of the pool. The negligence of an employee charged with the duty of operation of the pool became the negligence of the defendant. Thus it has been held that the negligence of city employees in allowing a dangerous game to be played upon its public skating place resulting in an injury was attributable to the municipal corporation. (*Fritz* v. *City of Buffalo, supra.* See, also, 253 App. Div. 788.) Likewise in *Collentine* v. *City of New York (supra)* the negligence of the employees of the city in charge of the public park was attributed to the city.

While the duty of the municipal corporation is " to provide an adequate degree of general superintendence " (*Peterson* v. *City of New York, supra,* p. 206), that duty becomes specific and requires the exercise of reasonable care and alertness in a known and specific danger. Prompt and efficient rescue of bathers known to be in danger is well within the scope of the adequate supervision to be expected of a lifeguard in a public swimming pool. I, therefore, conclude that the negligence of the lifeguard may be attributed to the defendant.

The defendant further contends that, except for the provisions of regulation 12 of chapter 6 of the Sanitary Code, enacted in pursuance of section 2-b of the Public Health Law, it would have been under no statutory obligation to have any attendance at its

public swimming pool and that in conforming with the Sanitary Code in providing such attendant it became the agent of the State in the performance of a governmental function in respect of public health and, therefore, incurred no liability for the acts of such attendant. It has been seen, however, entirely independently of the directions of the Sanitary Code, that the defendant, in maintaining a public swimming pool, was required to provide an adequate degree of general superintendence of the use of such pool. (*Peterson* v. *City of New York, supra,* p. 206.) The Sanitary Code imposed regulations which affected alike both private and public swimming pools. It required this defendant, if it operated a swimming pool, to conduct it "under the personal supervision of an operator or competent attendant trained in life-saving procedure." The village was under no obligation to operate its pool. If it did so it was required, in the same manner as the owner of a private pool, to provide supervision of a competent attendant. In conforming with this direction it complied with a regulation of general application. It certainly could not be the intent, nor is it the effect of compliance with such a regulation, that a municipality would escape all liability for the negligence of an employee hired by it to carry the regulation into effect upon the theory that supervision, as distinguished from operation of the pool, was an act in pursuance of a governmental function.

In *Van Dyke* v. *City of Utica* (203 App. Div. 26, 28) it was said: "But where the duties are cast upon a municipality, either by mandatory provisions of law or by those permissive only, which the municipality has adopted, and those duties are not in their nature governmental but could be carried on by individuals and relate to the convenience, the pleasure or welfare of the individual citizens, the municipality is then acting as a legal individual in a ministerial and administrative capacity. Correlative with the exercise of those duties is the obligation to perform them with reasonable care and vigilance. Failure to so perform, followed by injury, may result in liability for damages."

This reasoning is as fully applicable to the liability of the defendant under compulsion to hire a lifeguard, for negligence of such lifeguard, as it is to the negligence of the village in the general maintenance and operation of the swimming pool.

Accordingly, the motions made by the defendant at the close of the plaintiff's case and at the close of the entire case are denied and the motion addressed to the verdict is likewise denied.

Submit order.