16 N.J. Super. 496 (1951)
85 A.2d 4
JAMES F. KANE, JR., BY HIS GUARDIAN AD LITEM, JAMES F. KANE, AND JAMES F. KANE, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
JAMES BASRALIAN AND ALICE BASRALIAN, INDIVIDUALLY AND T/A RIVERDALE PICNIC GROVE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 19, 1951.
Decided December 5, 1951.
*498 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Raymond L. Cuneen argued the cause for respondents.
Mr. John E. Selser argued the cause for appellants (Mr. Charles C. Shenier, attorney).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Defendants' appeal challenges the denial of their motion for involuntary dismissal at the close of plaintiffs' case in the Law Division, Bergen County. The suit is for personal injuries suffered by the infant plaintiff, then two years old, when he ran to a stake in one of the pits of a horseshoe pitching court and was struck on the head by a horseshoe thrown by a patron of defendants' picnic grove.
The child and his parents picnicked at the grove with a party affiliated with a church organization sponsoring the picnic. The grove comprises over eight acres and has baseball grounds, a swimming pool, wooded picnic areas and the horseshoe pitching courts for the diversion of patrons.
After lunch a number of the men in the party obtained horseshoes, which were kept "locked up" by defendants, organized teams and played for several hours on the two courts, which lay between a storage shed and a shelter house at a place removed from the baseball diamond, the swimming pool and the general picnic area. The steps to the shelter house were 10 to 12 feet from the stake in question. The shelter was largely an open structure, provided for rainy day use or pavilion dances. This day was a "most beautiful day, you would not want to expect a better one," and there was no dancing. The shelter was not used by this group except *499 as some members passed through it to the pitching courts rather than walk around the structure.
The child's mother had been caring for him while his father played baseball. The mother decided to watch the horseshoe pitching, and the father relieved her of the boy's care. The child wanted to go into the shelter house to look out of the window, and his father followed him in. When they came out and descended the steps the child first turned to his left, away from the courts, toward his mother who was standing at one side. The father testified:
"I just kept following him * * *. He came out of the house. As I said, at the time he came out of the house, there was no horseshoe pitching, and he started to walk toward his mother which was over in this direction here (indicating). I followed him, and just as quick as a light, he turned around, and he was headed in that direction, which was that stake * * *. He turned so fast, and I was  he was at the stake before I could even move around. At that particular time, the gentleman (one of the party) who was at the far end had thrown a horseshoe, and just as he got there, the horseshoe hit him on the top of the head * * * it happened in the course of a few seconds."
The organized play had ended at the time and the horseshoe was thrown casually.
The negligence alleged, as specified in the pretrial order, is the failure "to provide a reasonably safe place for the purposes of the invitation." The argument in plaintiffs' brief is that defendants "created a place of danger" by locating the pit containing the stake within 10 to 12 feet of the shelter steps, a danger said to have been "aggravated" by defendants' failure "to consider the people that were to visit the premises," "there were no rules of safety established with reference to the sports conducted, no barriers or fences, and the pits were located within the narrow confines of two buildings from which people walked in and out of from time to time."
Defendants' motion included a ground that the infant plaintiff was not an invitee but a licensee. This ground is not, however, urged on the appeal. That the child was an invitee and that defendants were under the duty to their *500 invitees to have and keep the premises in a reasonably safe condition is not questioned by them here. Their position on the appeal is that, accepting as true all evidence which supports the view of the plaintiffs and giving them the benefit of all inferences which may logically and legitimately be drawn therefrom in their favor, nevertheless there was no proof upon which fair-minded men might honestly differ as to the conclusions to be drawn from the facts, and that it was the trial court's duty to declare that actionable negligence had not been proved. See Gentile v. Public Service Coord. Transport, 12 N.J. Super. 45 (App. Div. 1951).
Insofar as defendants allowed this sport to be carried on in the grove in the place allotted for it, what amounts to due care for the safety of their invitees who went to the vicinity of that place depends not only on the particular facts and circumstances disclosed by the record but on the nature of the sport. The nature and special hazards of a particular sport may charge the operators of a grove such as this with the duty to provide some protection for spectators and other patrons whose presence in the areas adjacent to the play-field might reasonably be expected. Blakeley v. White Star Line, 154 Mich. 635, 118 N.W. 482 (Sup. Ct. Mich. 1908); Annotations, 142 A.L.R. 868, 149 A.L.R. 1174; 52 Am. Jur. 306, et seq. However, in this case we are not concerned with defendants' duty to spectators and other patrons outside the playing field but with their duty, if any, to take precautions to prevent a child from running into the playing area proper. In the circumstances, such a duty is not to be raised unless, at the least, there are proofs supporting an inference that the presence of children of tender years at play in close proximity to the pitching courts who it might be foreseen would run out into the playing field was or should have been known or have been anticipated. It may be admitted that children are to be expected to act upon immature judgment, childish instincts and impulses, Danbeck v. New Jersey Traction Co., 57 N.J.L. 463 (Sup. Ct. 1895), but whether defendants must calculate on this and take precautions *501 accordingly depends upon whether they have knowledge of or are to be charged with reason to foresee the presence there of playing children and that harm might befall them if a proper degree of caution is not exercised. Terranella v. Union Building & Construction Co., 3 N.J. 443 (1950).
Even plaintiffs' suggestion that defendants knew or should have known "that there would be small children walking about the premises and running in and out of the various buildings and about the grounds" has no support in the record. Certainly there was no proof that small children on this day used the shelter as a playground and ran in and out, passing in the vicinity of the pits and into the pitching area. Nor was there any showing that on previous occasions of which the defendants knew or should have known this had been done by children. See Connolly v. Palisades Realty and Amusement Co., 11 N.J. Misc. 841 (Sup. Ct. 1933), affirmed 112 N.J.L. 502 (E. & A. 1934). There were children in the party but it does not appear how many or that any amused themselves in the vicinity of the pitching courts. And the evidence of defendant, James Basralian, does not aid plaintiffs' case. He testified that he saw only a couple of children, "There are not many children in that kind of a group, a Saturday group," and that those he saw were at another place some distance from the courts. He admitted seeing the men pitching horseshoes on several occasions during the afternoon, but denied he saw any children there.
Thus, we have merely the totally unexpected vagary of a two-year-old child who escaped his father's vigilance and ran into the pit as the horseshoe was thrown at the stake, and this does not suffice to present a question for jury determination. Cf. Spitzkopf v. Mitchell, 114 N.J.L. 160 (Sup. Ct. 1935).
Reversed.