HENROID, ADMINISTRATOR, APPELLANT, *v.* GREGSON HOT SPRINGS CO., RESPONDENT.

(No. 3,677.)

(Submitted May 19, 1916.  Decided June 20, 1916.)

[158 Pac. 824.]

*Death in Natatorium—Damages—Negligence—Burden of Proof —Minors—Trespassers Ab Initio—Appeal and Error—Non-suit—Correct Result—Wrong Reason.*

Appeal and Error—Nonsuit—Correct Result—Wrong Reason.
    1.  If a ruling granting a nonsuit was correct, though based upon an erroneous reason, it will nevertheless be affirmed.
Damages—Death in Natatorium—Negligence—Burden of Proof.
    2.  In an action to recover damages for the death of a minor by drowning in defendant's natatorium, it was incumbent upon plaintiff administrator to make out a *prima facie* case of actionable negligence in favor of the deceased in his lifetime and against the defendant.

---

Cases passing on the question of liability of persons maintaining bathing resort for hire for safety of patrons, see notes in 3 L. R. A. (n. s.) 982; 32 L. R. A. (n. s.) 715; 38 L. R. A. (n. s.) 72, and 42 L. R. A. (n. s.) 1073.

Same—Swimming-pools—Care Required—Minors.

3.   One who operates for profit a swimming-pool to which the public are invited, owes to patrons a duty which is measured by the standard of ordinary care proportionate to the risk to be apprehended and guarded against, a higher degree of care being due to a minor thirteen years old whom he knows cannot, than to one whom he knows can, swim.

Same—Trespasser *Ab Initio*—Duty Owing to.

4.   If plaintiff's intestate secured admission to defendant's swimming-pool by representing to the person in charge that he could swim when in fact he could not, he became a trespasser *ab initio* to whom the defendant proprietor owed no duty other than to refrain from willfully or wantonly injuring him.

   [As to diligence required when a human life is involved, see note in 77 Am. St. Rep. 26.]

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by Edward J. Henroid, as administrator of the estate of Leo Henroid, deceased, against the Gregson Hot Springs Company. Judgment for defendant and plaintiff appeals. Affirmed.

*Messrs. Maury, Templeman & Davies* and *Mr. C. M. Sawyer,* for Appellant, submitted a brief; *Mr. J. O. Davies* argued the cause orally.

Keepers of bathing resorts and plunges where the people are invited to bathe must adopt every reasonable precaution and every reasonable method to provide assistance to any and all, whether children or adults, who may meet with any accident or misfortune while in bathing. (*Larkin* v. *Saltair Beach Co.,* 30 Utah, 86, 116 Am. St. Rep. 818, 8 Ann. Cas. 977, 3 L. R. A. (n. s.) 982, 83 Pac. 686; *Brotherton* v. *Manhattan Beach Imp. Co.,* 48 Neb. 563, 58 Am. St. Rep. 709, 33 L. R. A. 598, 67 N. W. 479; *Id.,* 50 Neb. 214, 69 N. W. 757; *Levinski* v. *Cooper* (Tex. Civ.), 142 S. W. 959; *Turlington* v. *Tampa Elec. Co.,* 62 Fla. 398, Ann. Cas. 1913D, 1213, 38 L. R. A. (n. s.) 72, 56 South. 696; *Flora* v. *Bimini Water Co.,* 161 Cal. 495, 119 Pac. 661.) In this state, any person, association or corporation owning or operating a place of amusement for gain is bound to use at least ordinary care for the protection of its patrons. (*Phillips* v.

*Butte etc. Fair Assn.,* 46 Mont. 338, 42 L. R. A. (n s.) 1076, 127 Pac. 1011.)

At the trial the defendant induced the trial court to grant a nonsuit by a very ingenious argument. It contended that in death by drowning the injury was a continuing one, and as it was not completed until death actually took place, death by drowning was instantaneous, or, in other words, that the person did not survive the injury; that since in drowning cases medical and surgical skill had developed to such an extent that it was possible to save the life of a drowning person at almost any moment before life actually departed from the body; that the extent of the injury was not certain and definite or completed until death actually took place, and therefore the person did not survive the completed injury. This contention was based upon the *dictum* found in the case of *Oliver* v. *Houghton Co. St. Ry. Co.,* 134 Mich. 367, 104 Am. St. Rep. 607, 3 Ann. Cas. 53, 96 N. W. 434, and is as follows: "We see no reason for splitting hairs as to what is meant by instantaneous death, though we can appreciate the difference between a continuing injury resulting in drowning, or death by hanging, throwing from a housetop, *etc.,* and one where a person survives the wrongful act in an injured condition."

No case was cited, and we do not believe that any can be found where a court holds directly that death by suffocation, strangulation, asphyxiation or drowning is instantaneous. This question has been definitely settled in Montana in our favor by the case of *Beeler* v. *Butte & London Dev. Co.,* 41 Mont. 465, 110 Pac. 528.

In the case of *Clark* v. *Manchester,* 64 N. H. 471, 13 Atl. 867, the court held under a survival statute that death by drowning was not instantaneous, and did so without there being any expert testimony in the record. They based their conclusion on the common and general knowledge of mankind in such cases. In the case of *Nourse* v. *Packard,* 138 Mass. 307, the court went so far as to hold that in a case of death by drowning, under a survival statute plaintiff could recover for conscious pain and

suffering—in this case the asphyxiation being produced by grain instead of water. (See *Finnegan* v. *Fall River Gas Works,* 159 Mass. 311, 34 N. E. 523; *Martin* v. *Boston R. Co.,* 175 Mass. 502, 56 N. E. 719; *St. Louis etc. R. Co.* v. *Stamps,* 84 Ark. 241, 104 S. W. 1114; *Texarkana Gas Co.* v. *Orr,* 59 Ark. 215, 27 S. W. 66; *Perkins* v. *Oxford Paper Co.,* 104 Me. 109, 71 Atl. 476; *St. Louis, I. N. & S. Ry. Co.* v. *Dawson,* 68 Ark. 1, 56 S. W. 46; *Melzner* v. *Northern Pac. Ry. Co.,* 46 Mont. 162, 127 Pac. 146.)

*Mr. L. O. Evans* and *Mr. W. B. Rodgers,* for Respondent, submitted a brief; *Mr. Rodgers* argued the cause orally.

Neither upon the complaint nor under the testimony could this case have been submitted to the jury except upon the theory that upon the operator of every bathing-pool, no difference how shallow the water might be in such pool, and no difference what precautions were taken to warn all persons of the depth of the water in which they were about to bathe, and no difference what regulations were enforced as to who should bathe in such pool, in reference to size, age and ability to swim, there is, by the law, cast upon such operator the absolute duty at all times to have attendants present to watch over and look after such bathers. Such is not the law. The cases cited by appellant do not justify this conclusion. The circumstances of each of those cases are so divergent from the case at bar that it may safely be said that they have no application whatever; and the most that could possibly be claimed for the rule is that if, under the particular circumstances of each case, reasonable care required that the operator of the bathing-pool take such precautions, he may be required to do so. (*McKinney* v. *Adams,* 68 Fla. 208, L. R. A. 1915D, 442, 66 South. 988, 993.) No such duty is cast upon the operator when the bather is not encountered by any undisclosed dangers and when he either understands, or ought to understand, the perils of bathing equally as well as the owner and operator of the bathing-pool. The law does not charge anyone with the duty of anticipating careless or reckless conduct on the part of another, or with the duty of

being more careful of another's safety than that person is of his own.

If the Henroid boy could not swim, then he was a trespasser from the beginning, and was in defendant's plunge without right and by means of false representations, and the defendant owed him no duty other than not to willfully do him an injury. (3 Thompson on Negligence, sec. 3323; 2 White's Supplement on Negligence, secs. 1070, 3323; *Gerahn* v. *International & G. N. R. R. Co.,* 5 L. R. A. (n. s.) 1025; *Broyles* v. *Central of Georgia Ry. Co.,* 166 Ala. 616, 139 Am. St. Rep. 50, 52 South. 81; *Toledo etc. Ry. Co.* v. *Beggs,* 85 Ill. 80, 28 Am. Rep. 613; *Egan* v. *Montana C. Ry. Co.,* 24 Mont. 569, 570, 63 Pac. 831; *Gates* v. *Northern Pacific Ry. Co.,* 37 Mont. 103, 115, 94 Pac. 751.)

There was no evidence that the deceased survived for any appreciable time the injury causing his death, or, speaking more accurately, the application of the external forces producing the injury causing his death; but, on the contrary, the evidence shows that the death of deceased was simultaneous with such injury, and therefore the death was what is known in law as an instantaneous death.  Since this suit is an administrator's suit for a cause of action claimed to have accrued to the deceased during his lifetime, and to have, by virtue of the general survival statutes, survived to the administrator, the burden was upon the plaintiff to prove that the deceased survived the injury which caused his death an appreciable length of time.  (*Corcoran* v. *Boston & A. Ry. Co.,* 133 Mass. 507; *Kennedy* v. *Standard Sugar Refinery,* 125 Mass. 90, 28 Am. Rep. 214; *Melzner* v. *Northern Pac. Ry. Co.,* 46 Mont. 162, 127 Pac. 146, 148; *Moran* v. *Hollings,* 125 Mass. 93.)

The survival rule does not embrace the question as to whether the deceased survived the negligent act ultimately setting in motion the forces producing the injury.  Were this the rule, a survival must always transpire.  Not only the rule of this°court, but the rule of every other court that has ever dealt with this question of survival, requires that the deceased must have survived the injury producing death for an appreciable length of

time after the same was received. (*Dillon* v. *Great Northern Ry. Co.*, 38 Mont. 485, 491, 100 Pac. 960; *Melzner* v. *Northern Pac. Ry. Co.*, 46 Mont. 162, 127 Pac. 146, 148; *Beeler* v. *Butte & London Copper Dev. Co.*, 41 Mont. 465, 110 Pac. 528, 531; *Kennedy* v. *Standard Sugar Refinery*, 125 Mass. 90, 28 Am. Rep. 214; *Moran* v. *Hollings*, 125 Mass. 93.)

An ordinary death by drowning, such as that of Henroid, falls strictly within the legal idea of an instantaneous death, as applied to the survival of actions. Death results from one injury; this injury is a continuing one, the external force producing the injury continues until the moment of death, and is not fatal until then. (*Moyer* v. *City of Oshkosh*, 151 Wis. 586, 139 N. W. 379; *Cheatham* v. *Red River Line*, 56 Fed. 248; *West* v. *Detroit United Ry. Co.*, 159 Mich. 269, 123 N. W. 1101; *Kearney* v. *Boston & Worcester R. R. Corp.*, 9 Cush. (Mass.) 108; *Lobenstein* v. *Whitehead & Kales Iron Works*, 179 Mich. 279, 146 N. W. 293, 297; *Kennedy* v. *Standard Sugar Refinery*, 125 Mass. 90, 28 Am. Rep. 214; Tiffany on Death by Wrongful Acts, 2d ed., sec. 44.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1913 the Gregson Hot Springs Company owned and operated a natatorium for profit to which the public were invited. The swimming-pool was one hundred and forty-five feet in length by forty-six in width, and, when full, the water varied in depth from four feet two inches to six feet six inches. Fifty-four feet from the west end a large rope was stretched across the pool at about the surface of the water, and forty-eight feet farther east was another rope. By this means the pool was divided into three compartments. On November 1 it had been emptied and was being refilled, so that when the accident occurred the water in the east compartment varied from a maximum depth of five feet ten inches to four feet six inches, in the center compartment from four feet six inches to four feet two inches, and in the west compartment from four feet seven inches

to four feet two inches.   About noon of November 1, Leo Henroid, thirteen and one-half years old, alleged to be about four feet eight inches in height, with a companion somewhat smaller applied for bathing suits; paid the required fees; went into the pool; and remained there for nearly two hours.   At about 2 o'clock the dead body of Leo Henroid was found in the west compartment, in water four feet five inches deep.   Henroid's companion had disappeared, and his identity, as well as the identity of the man who discovered the body, is lost.   This action for damages was brought by the administrator of Leo Henroid's estate.   The trial court granted a nonsuit, and from the judgment entered thereon plaintiff appealed.

The motion for nonsuit challenged the sufficiency of the evidence to show actionable negligence on the part of the defendant, or to show the existence of a right of action which survived to plaintiff.   It was also insisted that plaintiff's case disclosed contributory negligence on the part of the deceased and an assumption of risk by the deceased.   In granting the motion the court indicated that its order was made upon the ground alone that the deceased did not survive his injury for an appreciable length of time; that his death was instantaneous, and therefore no cause of action arose in his favor which could survive to his heirs or personal representative.   If the ruling was correct, it is immaterial that an erroneous reason was advanced to justify it.   (*City of Butte* v. *Goodwin,* 47 Mont. 155, Ann. Cas. 1914C, 1012, 134 Pac. 670.)

Whether death by drowning is instantaneous death within [2]   the legal concept of the term is not a determining factor in this case.   It was incumbent upon the plaintiff to make out a *prima facie* case of actionable negligence under the allegations of his complaint in favor of Leo Henroid in his lifetime and against the defendant, and in this he failed.

The complaint states the facts disclosing the representative capacity of plaintiff, the corporate character of the defendant and its ownership and operation of the natatorium, and alleges that on November 1, 1913, Leo Henroid applied for the privilege

of bathing, paid the required fee, secured a bathing suit, and was permitted by the defendant to go into the pool to bathe; that the water varied in depth from three feet to six feet; that the deceased was then about thirteen years of age, about four feet eight inches tall, unable to swim and unable to take care of himself in water over three feet deep, and that these facts were known to the defendant. The complaint also contains the following: "That the defendant carelessly and negligently permitted and allowed said Leo Henroid to so bathe in said plunge for a period of time of about two hours without any person being present to watch or look after the said Leo Henroid. That the said Leo Henroid, while bathing in said plunge as aforesaid, and through the carelessness and negligence of the defendant in failing and neglecting to have any person present to care for him, in some manner, unknown to this plaintiff, got into a portion of said plunge where the water was above his head, and was unable to get out by himself, and a large quantity of water got into his lungs and stomach and caused him to strangle and suffer great physical and mental pain and anguish, and caused him great physical injury, from which he died some ten or fifteen minutes thereafter."

Plaintiff's theory of the measure of defendant's duty is not made very plain in his complaint. If it can be construed to charge negligence in permitting the deceased to remain in the water an unreasonable time, the case fails, for there is no causal connection between such negligence and the injury. It could not be contended that drowning resulted from exhaustion occasioned by being in the water for an unreasonable time. There is not any evidence to suggest such a result.

If the complaint intends to charge negligence in failing to provide a personal attendant or life guard, based upon the assumption that Leo Henroid could not swim, the case likewise fails. An attendant at the plunge, called as a witness for the plaintiff, testified that he inquired of Henroid and his companion if they could swim, and by way of reply Henroid swam across the plunge and back without stopping, and said, "I

guess I can swim"; that the other boy then swam half across and back.   There is some evidence, negative in character, which at first blush might seem to point to a contradiction of this, but if it is material to know whether the deceased could swim at the time he first entered the plunge, it would seem to be established that he could, or, at least, if the presence of a life guard was required only because he could not swim, the evidence fails to establish the necessity.   The evidence concerning Leo Henroid's ability to swim was brought out on cross-examination, but on direct examination the witness was asked concerning instructions given him by the management, and this cross-examination did not exceed the limits set by section 8021, Revised Codes.

Plaintiff must have had some purpose, however, in alleging [3] that Leo Henroid could not swim and in attempting to prove the fact, and that this fact was known to defendant.   It must have been the purpose of this allegation to fix the measure of defendant's duty in this particular instance.   That duty is to be measured by the standard of ordinary care (*Phillips* v. *Butte etc. Fair Assn.*, 46 Mont. 338, 42 L. R. A. (n. s.) 1076, 127 Pac. 1011), and ordinary care is care proportionate to the risk to be apprehended and guarded against.   (*Bourke* v. *Butte Electric & P. Co.*, 33 Mont. 267, 83 Pac. 470.)   These rules are recognized by the authorities generally in cases of the like character as the one now under consideration.   (*Turlington* v. *Tampa Electric Co.*, 62 Fla. 398, Ann. Cas. 1913D, 1213, 38 L. R. A. (n. s.) 72, 56 South. 696; *Flora* v. *Bimini Water Co.*, 161 Cal. 495, 119 Pac. 661; *Larkin* v. *Saltair Beach Co.*, 30 Utah, 86, 116 Am. St. Rep. 818, 8 Ann. Cas. 977, 3 L. R. A. (n. s.) 982, 83 Pac. 686; *Brotherton* v. *Manhattan Beach I. Co.*, 48 Neb. 563, 58 Am. St. Rep. 709, 33 L. R. A. 598, 67 N. W. 479; *Id.*, 50 Neb. 214, 69 N. W. 757.)

Other things being equal, the defendant would owe a higher degree of care to the boy whom it knew could not swim, and who was permitted in the pool, than to one whom it knew could swim.   In other words, the ability to swim or the lack of it would be an important factor in the sum of all the circum-

stances which determine what is and what is not ordinary care. We think this is the theory upon which the complaint proceeds —the theory upon which recovery is sought—and if the evidence tended to show that this defendant knew, or by the exercise of ordinary care should have known, that Leo Henroid could not swim, it might be conceded, for the purpose of this appeal, that a *prima facie* case would be made out; but there is not any evidence that defendant knew he could not swim, and the only knowledge brought home to it was conveyed by the exhibition of his ability to swim and his own statement. Plaintiff's evidence is that when Leo applied for the privilege of the pool, he was asked if he could swim and replied in the affirmative; that this inquiry was directed to him in pursuance of a rule of the defendant requiring it, and which denied the privileges of the natatorium to the minor who could not swim and who was unaccompanied by parent or guardian, so that, if it be [4] true, as plaintiff contends, that Leo Henroid could not swim, he secured admission by misrepresentation as to a material fact by reason whereof he became a trespasser *ab initio* (3 Thompson's Commentaries on the Law of Negligence, sec. 3323), to whom the defendant owed no duty other than to refrain from willfully or wantonly injuring him. (*Egan* v. *Montana C. Ry. Co.*, 24 Mont. 569, 63 Pac. 831.)

We are not called upon to determine whether the rule of ordinary care required the defendant to provide a life guard for the deceased without reference to his ability to swim. The complaint does not charge negligence in that particular, and the evidence offered by plaintiff in the direct examination of his witnesses discloses that his theory of liability in the instant case had its foundation in the assumption that the deceased could not swim, and because of that fact could not care for himself in water more than three feet deep. The burden was upon the plaintiff to show that the deceased was rightfully in the plunge, and that his death resulted proximately from a breach of duty which the defendant owed to him, and with which

it is charged in the complaint.  In this he failed, and for this reason the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.