## CENTRAL OF GEORGIA RAILWAY COMPANY *v.* MERIWETHER COUNTY.

A county, after having adopted the alternative road law as embodied in the Civil Code (1910), § 694 et seq., and after having levied the maximum rate of $4 per thousand for the maintenance of such system, can not levy an additional tax, under the provisions of the act of the General Assembly of September 19, 1908 (Acts 1908, p. 1119), for the support of a chain-gang to be used upon the public roads, bridges, or other public works of the county.

No. 689.	SEPTEMBER 14, 1918.

The Court of Appeals certified to the Supreme Court the following questions (in Case No. 8397):

"For the year 1913, Meriwether County, acting through its commissioners of roads and revenues, levied tax for county purposes of $12.50 per thousand on all property in that county. The order of the commissioners was itemized so as to show the percentage of the tax to be used for the various purposes for which a county is allowed by law to levy tax, and included, among others, the following items: Item No. 10, a levy of $4 per thousand, 'to road fund under the alternative road law;' and Item No. 11, a levy of $2.335 per thousand, 'to support of chain-gang.' The plaintiff in error interposed an affidavit of illegality to a fi. fa. issued against it for the collection of item No. 11, of $2.335 per thousand, designated 'to support of chain-gang.' The affidavit of illegality was submitted to the judge of the superior court upon an agreed statement of facts, from which it appears that the alternative road law was in force in Meriwether County in the year 1913, and that the tax levies No. 10 and No. 11, mentioned above, would raise on the taxable property of the county the gross sums of $15,854.03 and $9,254.79 respectively, whereas the expenditures for that year in maintaining and caring for the convicts in that county amounted to $26,012.94. The agreed statement of facts further indicates that if item No. 11, 'to support of chain-gang,' were to be considered as a levy for general county purposes, the levies altogether so made would exceed fifty per cent. of the then State tax levy of $5 per thousand.

"1. Can a county, after having adopted the alternative road law as embodied in the Civil Code (1910), § 694 et seq., and after having levied the maximum rate of $4 per thousand for the maintenance of such system, levy an additional tax, under the provisions of the act of the General Assembly of September 19, 1908 (Ga. L. 1908, p. 1119), for the support of a chain-gang to be used upon the public roads, bridges, or other public works of the county?

"2. If the county can levy such a tax for the support of the chain-gang, must that tax and the other levies for county general purposes combined be not greater than fifty per cent. of the State tax rate?"

*Battle & Hollis,* for plaintiff in error.

*N. F. Culpepper,* contra.

FISH, C. J. The alternative road law referred to in the first question propounded by the Court of Appeals is the act of 1891

(Acts 1890-91, p. 135), now embodied in the Civil Code, §§ 694-704. The caption of that act is as follows: "An act to give the commissioners of roads and revenues, or the ordinary, or county judge, as the case may be, of each county, the power and authority to lay out, open, change, or discontinue the public roads, and to work and have worked the same; to provide for levying a tax for road purposes; to prescribe who shall be subject to road duty; for the appointment of a superintendent of roads and other necessary officers; to provide how said roads shall be worked; to provide for the punishment of defaulters, and how and when this act shall go into effect in any county, and for other purposes." The provisions in the body of the act undertake specifically and in detail to carry out the purposes embraced in its caption. We will refer to the Civil Code for the most prominent and material portions of the act necessary to be here considered. The commissioners of roads and revenues, or other officer having charge of county matters, has "the sole right to lay out, open, change, or discontinue public roads [in the county], and the sole management of the working of said roads; and said authorities shall have authority to appoint a superintendent of public roads when necessary, and also to appoint all overseers, guards, and officers that may be required to successfully carry out the provisions of this article, to prescribe the duties of said superintendent, guards, and officers, fix the terms of office of the same, and to prescribe and pay said appointees such salaries or wages as may be deemed proper." § 694. The next section (695) gives to such county authorities the power to fix the time in each year that male citizens between the ages of 21 and 50 years shall work the public roads of the county, or to pay such commutation tax as may be fixed by said authorities. Sections 701-703 provide for the trial and punishment of defaulters. In section 698 it is provided that "Said authorities may purchase any and all machinery, implements, tools, wagons, and stock necessary and required for working said roads, and may build such houses or stockades, and purchase any thing or article necessary and useful in handling and working the chain-gang." We quote also section 696, as follows: "The commissioners of roads and revenues, or ordinary, as the case may be, shall levy a tax additional to any now authorized by law, of not more than four tenths of one per cent., on all the taxable property of the county; and the funds raised by said taxation, together with the commutation tax here-

tofore provided for, shall be known as the 'Public-Road Fund' of the county, and shall be used and expended for the purposes of paying the salaries and wages, and for working, improving, and repairing the public roads, as herein set forth." Under section 699, "said authorities shall expend said public-road fund in any manner they may deem best for putting and keeping the roads in thorough condition and repair." Now, as to the provisions for working the public roads of a county wherein the alternative road law by reason of the recommendation of the grand jury is in force, section 697 declares: "Said authorities are authorized to work, improve, and repair the public roads, as follows: 1. They may work a chain-gang (which said authorities are hereby empowered to organize; said gang to consist of the misdemeanor convicts of the county, or of any other county in this State that may be obtained without cost or for hire) and those who do not pay the commutation tax: Provided, that the convicts and those who do not pay the said tax shall not be worked together. 2. They may work free hired labor and those who do not pay the commutation tax. 3. They may have said roads worked, improved, or repaired, by contracting for the same, in such manner as they may deem fit, with private parties, or corporations: Provided, that if the work is done by contract, the contractors shall be required to employ the chain-gang, if established, and the labor of those who do not pay the commutation tax, and to pay for the same. 4. They may employ or combine any or all of said three above-mentioned methods, or may use any other method or system that may be desired for accomplishing the work necessary to put and keep the public roads in good condition."

It will readily be perceived, from a consideration of the provisions above quoted from the alternative road law, that it was the purpose of the General Assembly in enacting it to provide an adequate and complete road law for any county in the State adopting it. Certain officials are given "the sole right to lay out, open, change, or discontinue public roads" in the county, and the sole management of the working of said roads (§ 694). They may establish a chain-gang for the working of misdemeanor convicts on the public roads (§ 697), and may build such houses or stockades and purchase any thing or article necessary and useful in handling and working the chain-gang, and may purchase all machinery, implements, tools, wagons, and stock necessary and required for work-

ing the public roads (§ 698), and such authorities may employ or combine any or all of the three methods mentioned in section 697, "or may use any other method or system that may be desired for accomplishing the work necessary to put and keep the public roads in good condition." Now, what does the act declare in reference to the raising of a fund for carrying out its provisions? This is made clear in section 696, which authorizes the commissioners of roads and revenues, or ordinary, as the case may be, to levy a tax additional to any other tax, of not more than four tenths of one per cent., on all the taxable property of the county; and the fund so raised, together with the commutation tax as provided for in the act, shall be known as the "Public-Road Fund" of the county, and it is explicitly declared that such fund "shall be used and expended for the purpose of paying the salaries and wages, and for working, improving, and repairing the public roads," as set forth in the act; and said authorities are empowered to "expend said public-road fund in any manner they may deem best for putting and keeping the roads in thorough condition and repair." § 699. It is manifest, however, that whatever method or system such authorities may adopt as in their judgment may seem best for putting and keeping the public roads of the county in thorough condition and repair, their power for raising a fund by taxation for the payment of the expenses so incurred is expressly limited to a levy "of not more than four tenths of one per cent. on all the taxable property of the county" (§ 696). It follows as a matter of course, that, "after having levied the maximum rate of $4 per thousand for the maintenance of such system" provided by the alternative road law, the county authorities have no power to "levy an additional tax, under the provisions of the act . . of September 19, 1908 (Acts 1908, p. 1119), for the support of the chain-gang to be used upon the public roads, bridges, or other public works of the county." This last-mentioned act was "An act to provide for the future employment of felony and misdemeanor male convicts upon the public roads of the several counties of the State," etc. It provided "that all male felony convicts, except such as are now required by law to be kept at the State farm, may, after March 31, 1909, be employed by the authority of the several counties and municipalities upon the public roads, bridges, or other public works of said counties or municipalities as hereinafter provided" (§ 2). But nowhere in the act is any provision made for the raising of a fund

428 · CENTRAL RY. CO. *v.* MERIWETHER COUNTY. (148

by the county authorities to pay the expenses of working its quota of convicts under the act. We conclude, therefore, that such expenses in a county wherein the alternative road law is in operation must be paid out of the "Public-Road Fund" raised as provided in section 696, supra. Now it is provided, in section 4 of the act of 1908, that in any county not using its convicts under the provisions of that act, where the prison commission has work done upon the public roads of such county, "the county authorities of such county are hereby authorized to pay said expense out of any funds raised for road purposes," thus clearly recognizing the existence of the "Public-Road Fund," raised under the provisions of the alternative road law (Civil Code, § 696). In view of the foregoing, we reach without difficulty the conclusion already indicated, that the first question propounded by the Court of Appeals should be answered in the negative. This being true, it follows that the second question need not be considered.

The case now in hand is not controlled by the decision rendered in. *Garrison* v. *Perkins,* 137 *Ga.* 744 (74 S. E. 541). It was there held by a majority of the court that "Any county in the State may make requisition for its quota of the male convicts to be employed upon the public roads of the county, and it is competent for the county authorities having charge of the roads and revenues of the county to levy a tax to defray the expense incurred in the maintenance, keeping, and equipment of the force of hands obtained from the State." The question upon which the court was divided in that case was, in brief, whether the act of 1908 conferred upon county authorities, by necessary implication, the power to levy taxes in addition to those previously authorized by law. The point whether a county wherein the alternative road law was in operation, and which, under that law, had levied the maximum tax, could levy an additional tax for the maintenance of felony convicts received under the act of 1908, was in nowise involved. No alternative road law was in operation in the county where the tax levy under consideration in that case was made. It is true that Justice Beck, in delivering the opinion for the majority of the court, used the following language: "We do think that any county in the State, whatever its road system might be at the time, could make requisition for convicts under the provisions of the act of 1908, and, having obtained the convicts in accordance with its application, could employ them conformably to the purposes of that law, keeping in

view other laws upon our statute books which relate to the same subject and matters germane thereto." Even if the language quoted were essential to the maintenance of the majority opinion, it does not necessarily control the question in the instant case, which is, whether a county which has, under the alternative road law, levied the maximum tax to raise a "Public-Road Fund," can levy an additional tax for the maintenance of a chain-gang for convicts received under the act of 1908.

Nor is the question involved in the present case controlled by the decision in *Pennington* v. *Gammon,* 67 *Ga.* 456. The ruling there made was as to the implied power to levy a tax where no express authority was given to do so.

*All the Justices concur, except*

BECK, P. J., and ATKINSON, J., who dissent, being of the opinion that the decision in the case of. *Garrison* v. *Perkins,* supra, is sound and requires a different conclusion from that reached by the majority of the court.