40221. MOREHOUSE COLLEGE et al. v. RUSSELL.

DECIDED MARCH 11, 1964.

*Sam F. Lowe, Jr., Smith, Field, Ringel, Martin & Carr,* for plaintiffs in error.

*Houston White, Beryl H. Weiner, John E. Hogg,* contra.

PANNELL, Judge. Eva Lou Russell brought an action in the Superior Court of Fulton County, Georgia, against Morehouse College, a corporation, certain named trustees thereof, and James Edward Haines, individually, seeking to recover for the full value of the life of her son, Arlee Russell, Jr., who came to

his death by drowning in the swimming pool owned and operated by the defendant college, and its trustees because of the alleged negligence of the defendants. After various allegations relating to the charter of the defendant corporation and the power and authority of the trustees, the petition alleged:

"That pursuant to their powers contained in said charter, said defendant trustees in office during the calendar year 1959 maintained and operated the school known as Morehouse College, having four scholastic years of collegiate study. In said college said trustees establish various departments of study and student activity, such as the department of arts, economics and business administration, education and psychology, history and political sciences, mathematics, modern foreign languages, music, physical education, religion and sciences.

"That said board in behalf of defendant corporation also employed at salaries fixed by it, various officers, professors, instructors and teachers, for said school, and placed professors, instructors and teachers in charge of the various departments and the courses of instruction within said departments, and outlined, approved, and directed not only said instruction personnel but also the technique and methods of instruction for each of said courses.

"That defendant trustees employed James Edward Haines as professor of physical education, and placed him in charge of instruction of swimming for said freshman class, including said son. One of the courses directed by said trustees to be taught by said Haines was known as physical education course No. 151, denominated 'Station No. 1, Aquatics,' which was required of all freshmen unskilled in swimming or who could not swim. Under the terms of his employment, it was Haines' duty to supervise and direct personally at all times the activities of said student members of said class while the members thereof were using said pool for class or instruction purposes. Said trustees employed as Haines' assistant instructors in said class No. 151 for the fall semester of 1959 a student in the Senior Class in said college, named Robert Carver Murphy, and a student in the Junior Class in said college, named Robert Edward Blount. Each of said students was a member of the

swimming team of said college, and had passed the senior life-saving course of the American National Red Cross on May 7, 1958. Neither of said students had sufficient training and experience as an instructor for said class of beginning or freshman students in that such instruction required experience and training in simultaneously watching for and guarding the safety of groups, and each member thereof, while at the same time giving instruction to the members of said group. Said students had not had sufficient training to teach and assure the safety of each member of said class at the same time. Neither of said student assistants had passed the water safety instructor course of the American National Red Cross.

"Said class No. 151 was to be held and was held in the gymnasium on the campus of defendant college. Said pool was 42 feet wide and 75 feet long. At one end said pool was shallow and of a depth varying from three to five feet for a distance of approximately twenty feet from said shallow end, and at the other end said pool was deep in that for at least twenty feet from said deep end said pool was at least twelve feet deep. There were two diving boards, one approximately ten feet above the surface of the water and the other approximately three feet above the surface of the water. Said ten feet diving board was in the middle of said deep end, and looking at said deep end from the shallow end said three foot board was on the right of said ten foot board in approximately the middle of said right side of said deep end. Said swimming pool was indoors, and was illuminated with daylight and electric lights. Experienced instructors in the exercise of ordinary care should and could have seen the body of any of said students on the floor of said swimming pool at all times, as hereinafter alleged.

"That petitioner's said son graduated from A. H. Parker High School, in Birmingham, Alabama, on May 28, 1959, applied for and on his merits won and was granted by the committee on scholarships of defendant corporation a tuition scholarship at Morehouse College for the school year 1959-1960 in the amount of three hundred and twenty-five ($325) dollars, payable $162.50 for the 1959 fall semester and $162.50 for the spring semester.

"That on September 7, 1959, petitioner's said son entered the defendant Morehouse College as a freshman student in the pre-medical course for the degree of Bachelor of Science. Petitioner's said son on September 9, 1959 paid all entrance fees for the fall semester of 1959 required by defendant corporation and said trustees, in the amounts of $162.50 for tuition, and $119.50 as the balance of fees due, and deposited $40.00 with defendant corporation in payment of his school books. On April 1, 1959, said son had paid $25.00 to defendant corporation as part payment on said entrance fees. Of said sums paid, said $162.50 resulted from said scholarship.

"As a result of said payments set forth in the prior paragraph, petitioner's said son became a paying and paid-up freshman student in defendant college for the fall semester, commencing on September 14, 1959. Said son was also present as a member of said freshman class during the week of September 7-13, 1959, a period denominated as freshman week. As a freshman, said son was required to take the course known as physical education course No. 151, Station 1 in said course in aquatics or swimming, the first class in which was to take place on said Wednesday, September 23, 1959.

"That on September 23, 1959, said son reported for said swimming class No. 151 at said designated time in his swimming trunks at said swimming pool. At said time, said Haines, Murphy and Blount, were present for the purpose of instructing said class and safeguarding the lives of the members of said class during the course of said instruction. Haines was the only competent and experienced instructor in swimming present at any time during said class, and he was present only as hereinafter alleged.

"That at the beginning of said class said Haines called the roll of said class, and introduced Murphy and Blount to said class. Haines told said class that Murphy and Blount were members of the swimming team, and would instruct said class on said date, and that each member of the class should know them, and should do whatever Murphy and Blount told them to do, and that no member of the class should take advantage of them simply because they were students. There were ap-

proximately fifteen members of said beginner class. Haines then directed said class to divide into two groups, the first group so directed being those who could not swim at all and the second group so directed being those who could swim. Said son separated himself into the group who could swim, and remained with said group. Said son was a beginner in swimming, and could swim only a short distance, and had never swum in a line with other swimmers swimming along with him. Said son had never received instructions in the proper use of his hands and feet and the proper method of breathing while swimming, and when he swam, he struggled to keep afloat, and did so with a great deal of difficulty.

"At approximately 3:00 o'clock P.M., said group who had segregated themselves from the other members of the class as being able to swim, consisting of nine or ten students, including said son, were told by said Murphy to line up across the end of the pool at the deep end thereof, and to swim from said deep end to said shallow end, and directed each of said group to get in the water and swim to the shallow end at the same time.

"Petitioner's said son lined up on the left side of said deep end facing the shallow end, and entered the water with said other students for the purpose of swimming to the shallow end, swam approximately ten feet in the direction of the shallow end, sank to the bottom and drowned. Petitioner charges that while said son was sinking and after he sank to the bottom, the fact of his sinking and the fact that his body was on the bottom of said pool should and would have been seen by a trained and experienced swimming instructor and that he would have been rescued by said instructor if said instructor had been present and watching from the proper location on the side of said pool while said group was swimming from said deep end to the shallow end of said pool, and that at least one of two trained and experienced instructors would have seen his sinking and his body on the bottom of said pool and rescued him, if at least two trained and experienced instructors had been in charge of said class at said time.

"While said class was separating into said two groups, and

before said group containing said son was directed by said Murphy to enter the water and swim to the shallow end of said pool, said Haines left said swimming pool room and went to another part of said building, which petitioner charges was his office. At the time Murphy gave said instructions to said group lined up at the deep end to swim to the shallow end and while said group was so swimming, and said son was drowned, said Haines was not present in the room nor was he watching or guarding said class or group thereof at any other location. At the time said son was drowned there was no trained, experienced and competent instructor in said swimming pool room.

"That after said Haines left said swimming pool room, said Murphy took charge of said group of students including petitioner's son, and first stood at said deep end with said group on the side opposite from where said son was lined up at said deep end to commence said swim to the shallow end. Said other group were receiving instruction from said Blount at the other end of said pool and Blount's attention was being given to his group. Blount was paying no attention to Murphy's said group while its members were swimming from the deep to the shallow end of said pool. Neither Murphy nor Blount saw said son sink to the bottom of said pool. The other members of said group of said class swimming from said deep end to said shallow end succeeded in arriving at the shallow end, where they were met by said Murphy. Said swimmers were directed by said Murphy to get out of said pool, where they remained for a period of from three to five minutes while said Murphy gave said group instructions on how to swim. At the end of said period, said Murphy directed said group to return to the water at the shallow end and to swim back to the deep end. After said group swam back to the deep end one of said swimmers, Albert Brooks, reported to said Murphy that he had seen and thereupon pointed out the body of said son at the bottom of the pool at said deep end. Said Murphy immediately dove in and brought the body of said son out of said water, laid his body by the side of said pool and commenced artificial respiration by manual means, there being no respirator provided by defendant trustees for said purpose. At 3:12 o'clock

P.M., some person, unknown to petitioner, telephoned the City of Atlanta Fire Department, which brought an artificial respirator within approximately five minutes after said call was made, used said artificial respirator on said son for approximately ten to fifteen minutes in an effort to resuscitate him, but without success. At approximately 3:32 P.M., a doctor from the Grady Hospital in the City of Atlanta arrived, examined said son and pronounced him dead. At said time said son was dead from drowning. Petitioner charges that said son sank to the bottom of said pool and remained there at least five or six minutes before his body was discovered and taken from said pool by said Murphy. Petitioner charges that if said son had been seen and rescued within two and a half minutes after he sank under said water, he could and would have been revived.

"That at said time and place, and during the entire time said class was in session said Haines, Murphy and Blount were employees of defendant corporation and defendant trustees, and were at all times acting within the scope of their employment.

"Petitioner charges that defendant trustees and defendant corporation, and each of them, in the exercise of ordinary care, were under the duty of prescribing, outlining and specifying a safe method for the use of said swimming pool by the members of said class No. 151, including said son, during the course of said instruction, and said Haines, Murphy and Blount were each under the duty to follow the method or methods so prescribed, outlined, and specified by defendant Board of Trustees. No such safe method of conduct for such instruction was so prescribed, outlined, and specified by said defendant Board of Trustees and said corporation.

"That before directing said group of nine or ten members of said class to enter said water at said deep end to swim to the shallow end, neither said Haines, said Murphy or said Blount had a reasonable knowledge of the ability of said members of said group to swim. Said Haines, Murphy and Blount knew that said class was a beginner class and that said swim, as directed by said Murphy, from the deep to the shallow end, was the first such swimming some of said swimmers, including said

son, had ever made in said manner, and that said swim was the first swim some of them, including said son, had ever made in said pool. Neither said Haines, Murphy or Blount had tested the ability to swim of the members of said group at the shallow end of said pool prior to the time said Murphy directed said group to swim from the deep end to the shallow end, and, not knowing their ability to swim, should have, in the exercise of ordinary care provided at least two trained and experienced instructors to watch and guard the members of said group while swimming from said deep end to said shallow end, and should have divided said group into groups of two at the time of said swimming from said deep to said shallow end of said pool so that each of said swimmers could be carefully watched and guarded.

"That said defendant trustees and each of them and said defendant corporation failed to provide a sufficient number of competent and experienced instructors to instruct and guard the safety, during said instruction, of the members of said class including said son; selected and employed as instructors for said class, said Murphy and said Blount who were known to be incompetent for said purpose; failed to prescribe, outline, and specify as a direction to said Haines and his said assistants that each student in said class be first examined in small groups of two or three students or by themselves in order to acquaint said instructors factually with the proficiency in swimming of each class member; failed to prescribe, outline, and specify that while said freshman students in said class No. 151 were assembled and receiving instruction in said class said Haines and at least one other trained, experienced and competent instructor be present at all times while said class was in session; failed to have any prescribed, outlined, or specified directions to guide and direct said Haines and said assistants in conducting said class to assure the safety of each member thereof; failed to provide a swimming pool with adequate safeguards, adequate personnel, and adequate rules for instructing said class safely to prevent the drowning of any member thereof.

"That defendant trustees were negligent in the following particulars: a. In failing to provide a sufficient number of com-

petent and experienced instructors, to instruct and guard the safety during said instruction of the members of said class, including said son.  b.  In selecting and employing as instructors for the members of said class, including said son, said Murphy and said Blount, who were not competent swimming instructors for said class in that each was without sufficient training and experience as instructors for said class, including petitioner's son, at said time and place, in that each lacked training and experience in observing and safeguarding the personal safety of said class members, including said son, while at the same time instructing each member thereof in swimming.  Defendant trustees and defendant corporation in the exercise of ordinary care, should have known of the said incompetency of said Murphy and said Blount as instructors for said class, in that each had been students in said physical education department for at least one year prior thereto, and said Haines knew of their said lack of training and inexperience.  c.  In failing to prescribe, outline, and specify as a direction to said Haines and his said assistants that each student in said class be first examined in small groups of two to three students or by themselves in order to acquaint themselves factually in said pool with the proficiency in swimming of each class member before directing said student so examined to enter said swimming pool for the purpose of swimming with said class or such a group of nine or ten students thereof, as said son was directed to do, so as to enable said Haines and said assistants to watch and safeguard said swimmers at all times and to have actual knowledge of the swimming capabilities of each, and to watch and safeguard said class members at all times.  d.  In failing to prescribe, outline, and specify that while said freshman students in said class No. 151 were assembled and receiving instruction as said class, said Haines and at least one other trained, experienced and competent instructor be present at all times directing and supervising said instruction in order to protect the safety of each member of said class, and that all times while said class was in session said Haines at least be present for said purposes.  e.  In failing to have any prescribed, outlined or specified directions to guide and direct said Haines and said assistants in the conducting of

said class No. 151 with respect to assuring the safety of each member thereof, such as requiring their instruction in smaller groups or singly or in shallow water in order to test their capacity to swim. f. In failing to provide a swimming pool for instruction for the members of said class No. 151, including said son, with adequate safeguards, adequate personnel, and adequate rules for instructing said class safely, to prevent the drowning of any member thereof while receiving instruction therein.

"Petitioner charges that the negligence as alleged in the foregoing paragraph was administrative negligence of said trustees, and as such was attributable to defendant corporation as corporate or administrative negligence, rendering said corporation liable to the extent of all of its assets and said trustees liable to the extent of any assets held in trust by them for the use of said defendant corporation.

"That defendant Haines divided said class into two groups, swimmers and non-swimmers, and permitted said swimmers group including said son to swim at said deep end without having first tested said son's ability to swim; permitted said son to enter into and swim with said group of nine or ten students in said swimming pool for the first time without providing a competent instructor to watch and guard the safety of said son and without having first tested and acquired actual knowledge of the swimming ability of said son; permitted said group of said class to make as their first effort to swim in said class with said group the swimming of the length of a seventy-five foot pool without having tested and acquired actual knowledge of the ability of each of said students; permitted said group to first enter said pool at the deep end for the purpose of executing their first swim in said pool without having first tested and acquired actual knowledge of the swimming ability of each of the members of said class; departed from said class while it was in session and going to another part of said gymnasium building out of the sight of said swimmers and said pool during the time said son first entered the water to swim as a member of the class No. 151; failed to be present to supervise and guard the safety and instruction of petitioner's said son at all times while he

was in the water; failed to supervise and guard the safety of each member of said group at all times while said son was in the water at a time when he had not acquired knowledge of the ability of each member of said class to swim and look after his own safety while in the water; left said class in the control and direction of Murphy and Blount whom he knew to be untrained and inexperienced as instructors at the said time when Haines knew said class to be a freshman or beginning class and unskilled in swimming; failed to require said group to be divided into small groups of two or three students or singly in the shallow end of said pool in order to test their ability to swim; failed to watch and observe petitioner's said son during said swim and failed to observe him sinking and his body at the bottom of said pool; failed to rescue said son within at least two and a half minutes after said son sank underneath said water; failed to revive or cause said son to be revived by artificial respiration.

"That said Haines was negligent in the following particulars: a. In dividing said class into said two groups of swimmers and non-swimmers and permitting said swimming in said swimmers group at said deep end without first having tested said son's ability to swim by having said son perform in his presence in said pool in a smaller group at the shallow portion thereof to determine and acquire knowledge of the degree of proficiency of said student in swimming and his ability to look after his own safety while swimming. b. In permitting said son to enter into and swim with said group of nine or ten students in said swimming pool for the first time during said first class without providing competent instructors to watch and guard the safety of said son while at the same time causing him to be instructed in swimming, and without having first tested and acquired actual knowledge of the swimming ability of said son. c. In permitting said group of said class to make as their first effort to swim in said class the swimming with said group of the length of said seventy-five foot pool, without having tested and acquired actual knowledge of the swimming ability of each of said students in said group, including said son. d. In permitting said group of said class, including said son, to first enter said pool at the deep

end of said pool for the purpose of executing their first swim in said pool, without having tested and acquired actual knowledge of the swimming ability of each of said students in said group. e. In departing from said class while it was in session and from said swimming pool room and going to another part of said building out of the sight of the said swimmers and said pool, who were also out of his sight, and there remaining during the time said swimmers, including petitioner's son, first entered the water as a member of said class No. 151 and attempted to swim from the deep end to the shallow end of said pool. f. In failing to be present to supervise and guard the safety and instruction of petitioner's said son at all times while he was in the water as a member of said class. g. In failing to supervise and guard the safety of each member of said class at all times while said son was in the water as a member of said class, at a time when he had not acquired knowledge of the ability of each member of said class to swim and look after his own safety while in the water. h. In leaving said class in the control and direction of said Murphy and said Blount, who were not trained and experienced as instructors sufficiently to supervise and instruct and at the same time observe and guard the safety of each and all of said members of said class No. 151, which members were known by said Haines to be the freshman or beginning class, and unskilled in swimming, while said lack of training and experience in such instruction of said Murphy and said Blount was known or in the exercise of ordinary care should have been known to said Haines, in that he had been their instructor in swimming for at least a year prior thereto. i. In failing to require said class to be divided into small groups of two or three students or singly in the shallow end of said pool in order to test their ability to swim, thereby first acquiring knowledge of the swimming ability of each member of said class before directing them or any of them to swim first at the deep end of said pool. j. In failing to watch and observe petitioner's said son during said swim and in failing to observe him sinking and his body on the bottom of said pool and failing to rescue said son therefrom within at least two and a half minutes after said son sank underneath said water. k. In failing to revive said son by artificial respiration, or to cause same to be done.

"That said Murphy and said Blount and each of them permitted said son to enter into and swim in said swimming pool for the first time during said first class and permitted said son to enter said pool at the deep end without having first tested and acquired knowledge of said son's ability to swim; attempted to supervise and guard the safety of each member of said group and at the same time to instruct each member of said group in swimming when each of them was incompetent as an instructor; failed to observe each member of said group at all times while each was in the water when neither said Murphy or said Blount had prior to said time acquired reasonable knowledge of each member of said class to swim and look after his own safety while in the water; failed to place themselves in said swimming pool room at such location where either or both could observe each member of said group while said member was swimming from the deep to the shallow end; failed to watch and observe petitioner's said son during said swim and failed to observe him sinking and his body on the bottom of said pool; failed to rescue said son therefrom at least two and a half minutes after said son sank underneath the water; failed to revive said son by artificial respiration or cause same to be done.

"That said Murphy and said Blount were jointly and severally negligent, in the following particulars: a. In permitting said son to enter into and swim in said swimming pool for the first time during said first class lined up with said group of said class, including at least nine or ten of said students, and in permitting said son to enter said pool at the deep end and to swim to the shallow end of said pool without having first tested and acquired knowledge of said son's ability to swim by testing him in a smaller group or singly at the shallow end of said pool. b. In permitting said members of said group, including said son, to first enter said pool at the deep end of said pool for the purpose of executing their first swim in said pool without having tested and acquired actual knowledge of the swimming ability of each of said students in said group, including said son. c. In attempting to supervise, observe and guard the safety of each member of said group and at the same time attempting to instruct each member of said group in swimming at a time

when each of them was incompetent as an instructor for said class No. 151 in that each had not had sufficient experience and training in instructing to perform the duties of an instructor and at the same time to observe and guard the safety of each of the members of said group. d. In failing to observe each member of said group at all times while each was in the water as a member of said class, when neither of them had prior to said time acquired reasonable knowledge of the ability of each member of the class to swim and look after his own safety while in the water. e. In failing to place themselves in said swimming pool room at such location within said room where either could observe each member of said group while said member was swimming from the said deep end to said shallow end of said pool. While said group was swimming from said deep end to the shallow end, none of the group of non-swimmers were in the water. While said group were attempting to swim from the deep end to the shallow end, said Blount stood at the shallow end of the pool, and said Murphy was standing at the left corner of said pool on the left side, when looking toward said large diving board from the opposite end, in neither of which locations could said Murphy or said Blount adequately observe and safeguard said son in said group swimming from the deep to said shallow end. f. In failing to watch and observe petitioner's said son during said swim and in failing to observe him sinking and his body on the bottom of said pool and in failing to rescue said son therefrom within at least two and a half minutes after said son sank underneath said water. g. In failing to revive said son by artificial respiration, or to cause same to be done.

"That the said administrative negligence of each of said trustee defendants, defendant corporation, and the said joint and several negligence of said Haines, said Murphy and said Blount, jointly and severally, was the proximate cause of the drowning of petitioner's said son in that the negligence of each of said defendants and said Haines, Murphy and Blount entered into and contributed directly, and effectively and proximately to cause said drowning of said son.

"Petitioner alleges that at the time of said drowning on Sep-

tember 23, 1959, defendant corporation had purchased and held title to and possession of a liability insurance policy issued by American Surety Company of New York, covering the liability, jointly and severally, of any of the named defendants for their negligence resulting in the homicide of petitioner's said son, in an amount unknown to petitioner, but charged by petitioner to be at least equal to or more than the amount sued for herein.

"That, in addition to said liability insurance policy, petitioner charges that defendant corporation acquires large sums from time to time, and has on hand at this time large sums derived from the tuition and other charges received from other paying students entering and remaining in said school. Each of the students entering said school and remaining therein are required by defendant corporation to pay tuition and other charges in order to enter as a student and remain in said school as a student.

"That defendant corporation is the owner of other than said aforedescribed assets, some of which are dedicated and devoted to college uses and purposes of defendant corporation, but others of said properties are held purely for investment in that said properties are not actually used by the students and faculty of Morehouse College for educational purposes, although the income and principal of said additional properties are used by said trustees for the further development and current expenses of said college."

The remainder of the petition contains allegations as to the son's scholastic honors and record, his good health and his earnings, and that plaintiff claims the full value of the son's life, to wit, $100,000 for which judgment was prayed.

Attached to the petition were the original charter, amendments and revivers thereof of the corporate defendant and the insurance policy. Various demurrers, both general and special, of the corporate defendant and the trustees, and the individual defendants, were filed to the petition. The trial court overruled all the demurrers, and the case is before this court for review of that order.

The numerous demurrers, both general and special, compose approximately 45 pages of the record. The special demurrers

were directed primarily to the allegations of the petition relating to the duties alleged and the specifications of negligence. The demurrers to the allegations of administrative negligence on the part of the trustees of the defendant college and to the allegations of the individual negligence of the employees and agents in most particulars raise substantially the same controlling questions. These questions may be stated in general terms as follows: Do the allegations of the petition affirmatively show that the deceased assumed the risk of drowning or showed such lack of ordinary care for his own safety as to preclude a recovery for his death under *Code Ann.* § 105-1307? Were the allegations of the duties and specifications of negligence conclusions of the pleader or insufficient as a matter of law to show either a duty or actionable negligence, either administratively or otherwise? Are the assets described in the petition such nontrust assets as could be subjected to a judgment obtained for nonadministrative negligence?

■ The petition alleges that the swimming class attended by the deceased at the time of his death by drowning was one required of any freshman "unskilled in swimming or who could not swim." Under these circumstances, the deceased who, according to the allegation of the petition, was an unskilled swimmer who could barely stay afloat, did not, as a matter of law, assume the risk of death by drowning, nor was he, as a matter of law, guilty of such contributory negligence as would bar a recovery for his death because of the fact that he separated himself into the group who could swim and entered the water upon instructions of his swimming teacher. The swimming instructors knew he was either an unskilled swimmer or one who could not swim, and the deceased, by separating himself into the group who could swim, did not represent that he was, or assume the position of one skilled in swimming, but was entitled to assume that his instructors knew he was not and would exercise ordinary care to protect him. Ordinary care on the part of the defendants under these circumstances might require a greater degree of care, *Young Men's Christian Assn. of Metropolitan Atlanta, Inc. v. Bailey,* 107 Ga. App. 417, 419 (130 SE2d 242) than would be required in those cases where the deceased was a mere volunteer

invitee or trespasser. *St. Clair v. City of Macon,* 43 Ga. App. 598 (159 SE 758); *Day v. Trion Co.,* 56 Ga. App. 1 (192 SE 88); Henroid v. Gregson Hot Spring Co., 52 Mont. 447 (158 P 824). It is for the jury to say whether the proximate cause of the death of the plaintiff's son was his own negligence or that of the defendants.

■ As a general rule, a private corporation, primarily maintained as an eleemosynary or charitable institution, is not liable for the negligence of its officers and employees unless it fails to exercise ordinary care in the selection of competent officers and servants or fails to exercise ordinary care in retaining such officers and employees. *Morton v. Savannah Hospital,* 148 Ga. 438 (4) (96 SE 887). The reason for the rule is that it is the policy of this State that the trust funds of such an institution are not to be depleted by subjection to liability for negligence. However, such institution may be liable for the negligence of its employees and officers, not administrative in character, but recovery would be restricted to noncharitable income or assets. *Morton v. Savannah Hospital,* 148 Ga. 438 (3), supra. "A charity hospital owes the same duty to a paying patient as does a hospital operated for pecuniary gain and the same law is applicable in both instances. The only difference would be from what funds an eventual judgment for the plaintiff would be satisfied." *Executive Committee &c. v. Ferguson,* 95 Ga. App. 393, 400 (98 SE2d 50), citing *Morton v. Savannah Hospital.* We see no difference between a hospital and an educational institution insofar as this principle is concerned. *Morton v. Savannah Hospital* was followed in *Bazemore v. Savannah Hospital,* 171 Ga. 257, 263 (155 SE 194). Two Justices dissented, but not upon application of *Morton v. Savannah Hospital.* Justice Atkinson dissented from the rulings in *Morton v. Savannah Hospital* herein referred to. It might be well to call attention to the fact that in the *Morton v. Savannah Hospital* case, the record discloses there was no allegation that the institution was being operated for a profit, nor was there any allegation that the payment for the services paid for the entire cost of rendering the services. In conforming to the opinion of the Supreme Court, this court in *Morton v. Savannah Hospital,* 22 Ga. App. 607 (96

SE 888), said, "Under the answers made by the Supreme Court (148 Ga. 423, 96 SE 887) to the several questions certified by this court in this case, it appears that the trial judge erred in sustaining the general demurrer to the plaintiff's petition; and therefore his judgment must be reversed." In *Robertson v. Executive Committee of the Baptist Convention,* 55 Ga. App. 469 (1) (190 SE 432), it was held: "Although an institution which is chartered as a hospital for the treatment of sick people is established primarily as an eleemosynary or charitable institution, yet where in its operation it takes pay patients and charges them for its services, the institution is liable to a patient who pays for the services rendered, for injuries to the patient while in the hospital, caused from the negligence of the institution; but the recovery would be restricted to the income derived from the pay patients or from other noncharitable sources. *Morton v. Savannah Hospital,* 148 Ga. 438 (96 SE 887); McKay v. Morgan Memorial Stores, 272 Mass. 121 (172 NE 68); Gamble v. Vanderbilt University, 138 Tenn. 616 (200 SW 510, LRA 1918C 875)." In Division 3 of the opinion, the court held: "Where it appeared from the evidence that the defendant maintained and operated the Georgia Baptist Hospital as a place for the treatment of sick people, and charged for such services, but, in instances where patients were unable to pay, the defendant received and treated them as charity patients, that the cost of treating charity patients came out of the income derived from the pay patients, that there were no stockholders of the institution and none of the income derived from the treatment of patients went to profits, but was used to defray the expenses of operating the hospital, including the treatment of the pay patients and the charity patients; and where it appeared that the plaintiff received physical injuries, as alleged in the petition, resulting from the negligence of the agents and servants of the defendants, the evidence was sufficient to support the allegations of the petition."

In *Community Hospital, Inc. v. Latimer,* 83 Ga. App. 6 (1) (62 SE2d 379), it was held: "Where in this suit by a minor through a next friend against the defendant for injuries negligently inflicted on such minor by a servant or employee of the

defendant acting in the performance of the defendant's business, the evidence upon the trial of a special plea in bar showed that the plaintiff and others had patronized the defendant hospital as paying patients under agreements to pay stipulated sums for all services rendered, but that the defendant hospital was chartered to 'be operated solely and only as a charitable organization and for the purpose of furtherance of aid to the general welfare and public health of said community, and organized solely with charitable purposes and a nonprofit organization insofar as any of its stockholders, contributors or donors are concerned,' and that no profit, dividends or pecuniary gain should 'ever enure or come into the hands of any stockholder, incorporator, association, donor or contributor of said hospital,' and that the defendant is permitted by its charter 'to receive any patients in said hospital, but any such funds or profits made, received from such patient shall be paid solely and only into the treasury of said hospital for the use solely to extend further charitable work of said organization,' such facts did not demand a finding for the defendant and in favor of the plea that the defendant was a charitable organization and not liable for the torts or negligence of its servants, and this is true although there was no allegation or proof that the defendant corporation had failed to exercise ordinary care in the selection of competent officers and servants, or had failed to exercise ordinary care in retaining such officers and employees, and the trial court, having directed a verdict in favor of the defendant did not thereafter err in granting a proper motion for a new trial. *Morton v. Savannah Hospital*, 148 Ga. 438 (96 SE 887); *Robertson v. Executive Committee of the Baptist Convention*, 55 Ga. App. 469 (190 SE 432)."

While there may be some inconsistencies in the holdings by this court in *Butler v. Berry School*, 27 Ga. App. 560 (109 SE 544) and *Georgia Baptist Hospital v. Smith*, 37 Ga. App. 92 (139 SE 101), and possibly in *Jackson v. Atlanta Good Will Industries, Inc.*, 46 Ga. App. 425 (167 SE 702) and *Burgess v. James*, 73 Ga. App. 857 (38 SE2d 637), this court is bound by the rulings of the Supreme Court in *Morton v. Savannah Hospital*, 148 Ga. 438, supra, and the decisions of this court in conformity therewith. It follows that the funds derived from regular tuition

paid by students do not constitute charitable funds and are not part of the charitable trust. They are not charitable donations but are payments for services rendered or to be rendered.

It follows, therefore, that the petition in the instant case sets forth a cause of action against the corporate defendant and the trustees in their official capacity, not only for any administrative negligence charged, for which recovery may be had against the general assets of the trust, but also on the theory of respondeat superior for any negligence of its employees and servants, recoverable out of any nontrust or noncharitable assets as might be disclosed by the allegations of the petition. The trial court did not err in overruling the general demurrers to the petition.

In this connection it is most strenuously insisted by the defendant that there are no facts alleged as to how the two instructors were incompetent, and that administrative negligence is confined to knowingly employing incompetent personnel, or retaining them after discovering their incompetency. The petition sufficiently alleged that the instructors were incompetent because they "lacked training and experience in observing and safeguarding the personal safety of said class members, including said son while at the same time instructing each member thereof on swimming." Administrative negligence was further alleged in the failure of the trustees to prescribe, outline and specify certain directions of conduct of the swimming class and the instructors thereof as more specifically alleged in detail in the petition. As was said in *Young Men's Christian Assn. of Metropolitan Atlanta, Inc. v. Bailey*, 107 Ga. App. 417, 420, supra: "It is our opinion that should the jury find that the defendant was negligent in providing an insufficient number of employees under all the existing conditions and in giving them adequate instructions as to the performance of their duties, the same would constitute an act of corporate or original negligence for which the doctrine of charitable immunity would not shield the defendant."

■ Headnote 3 requires no elaboration.

■ In paragraph 62 of the petition it is alleged that "others of said properties are held purely for investment in that said properties are not actually used by the students and faculty of

Morehouse College for educational purposes although the income and principal of said additional properties are used by said Trustees for the further development and current expenses of said college." A petition, when considered on demurrer, must be considered most strongly against the pleader and in applying this rule the petition should be construed in the light of its omissions as well as its averments. *Toler v. Goodin*, 200 Ga. 527, 534 (37 SE2d 609), and citations. There is no express allegation that the "properties" invested are noncharitable or nontrust assets, and that they are such will not be inferred unless the inference is demanded from the facts alleged. *Bivins v. Tucker*, 41 Ga. App. 771, 774 (154 SE 820). The mere fact that "properties" are invested and the income used for charitable purposes does not demand the inference that the principal is not held in trust for the same charitable use. Further, it appears from additional allegations in the same paragraph that the principal and income are used for further development and current expenses of the defendant college. It appears, therefore, that the special demurrers to this paragraph of the petition should have been sustained. The allegations that the defendants Haines, Murphy and Blount were negligent "in failing to revive said son by artificial respiration, or to cause same to be done," should have been stricken on demurrer. While there may have been a duty upon these defendants to attempt to revive the son by artificial respiration (which the petition alleged they did as soon as they discovered him on the bottom of the pool and removed him therefrom), there was no duty upon them to be successful in such attempt.

■ "Where a petition states the facts upon which the claim of negligence is based, a general allegation in the petition, following a statement of facts relied upon to show negligence, will be construed to have reference to the particular facts pleaded; and, so construed, it is not subject to special demurrer." *Fuller v. Inman*, 10 Ga. App. 680 (4) (74 SE 287). "It is the general rule that the allegations of a petition, when attacked by appropriate demurrer, be construed most strongly against the pleader. So, where general allegations setting up negligence are followed or preceded by specific detailed averments, the general ordi-

■

narily must yield to the specific averments. *Baggett v. Edwards,* 126 Ga. 463 (55 SE 250); *Palmer Brick Co. v. Chenall,* 119 Ga. 837, 844 (47 SE 329); *McClure Ten Cent Co. v. Humphries,* 29 Ga. App. 524 (1) (116 SE 54); *Doyal v. Russell,* 183 Ga. 518 (189 SE 32); *Green v. Perryman,* 186 Ga. 239 (197 SE 880); *Wood v. Pynetree Paper Co.,* 29 Ga. App. 81 (114 SE 83)." *Carter v. Callaway,* 87 Ga. App. 754, 761 (75 SE2d 187); *Henderson v. Baird,* 100 Ga. App. 627, 634 (112 SE2d 221). See, also, *Miller v. Ben H. Fletcher Co.,* 142 Ga. 668 (5) (83 SE 521), and the special demurrers therein set forth, and the rulings in *Young Men's Christian Assn. of Metropolitan Atlanta, Inc. v. Bailey,* 107 Ga. App. 417, supra, in which the allegations and the demurrers thereto were very similar to those in the instant case.

Upon application of these rulings to the special demurrers in the instant case, except for those already considered above, the allegations of the petition are not subject to the special demurrers interposed.

*Judgment reversed in part; affirmed in part. Bell, P. J., and Hall, J., concur.*